86 523
f116 90

TERRELL *v.* STATE.

(*Jackson.* April 26th, 1888.)

1. CRIMINAL LAW. *Mayhem. Intent.*

A *specific intent or purpose to maim or disfigure* is not, under our statute, an essential element of the crime of mayhem.

Code cited: §§ 5357–5360 (M. & V.); §§ 4606–4609 (T. & S.).

Case cited and approved: 2 S. W. Rep., 631.

Cited and distinguished: Chick *v.* State, 7 Hum., 165; 1 Iredell, 121.

2. SAME. *Same. Malice.*

The malice requisite in mayhem is "malice according to its common law signification, which is not confined to a particular animosity to the person injured, but extends to an evil design in general—a wicked and corrupt motive, an intention to do evil."

Cases cited and approved: Wright *v.* State, 9 Yer., 343, 344; Worley *v.* State, 11 Hum., 175.

3. STATUTES. *Repeal.*

A statute purporting to cover an entire subject repeals all former statutes on the same subject, either with or without a repealing clause, and notwithstanding it may omit material provisions of the earlier statutes.

Cases cited and approved: The Druggist Cases, 85 Tenn., 450; Poe *v.* State, 85 Tenn., 495; 11 Wall., 88.

---

FROM WEAKLEY.

---

Appeal in error from the Circuit Court of Weakley County. W. H. SWIGGERT, J.

C. M. EWING for Terrell.

Attorney-General PICKLE for State.

CALDWELL, J.  The plaintiff in error, Ned Terrell, stands convicted of the crime of mayhem, and is under sentence of two years' confinement in the penitentiary.

The indictment charges him with having unlawfully, feloniously, willfully, and maliciously made an assault upon the prosecutor, James Wilson, and struck him in one eye with a stone, or some other hard substance, whereby the eye was put out, and the prosecutor was maimed and disfigured.

It is shown in the proof, and admitted by the prisoner, that he struck the prosecutor in one eye with "a half of a brick," and that the prosecutor was thereby rendered entirely blind, having previously lost the other eye.

On the trial of the case, His Honor, the Circuit Judge, quoted to the jury the statute under which the prisoner is prosecuted, and then charged them further, and among other things, that, "in order to convict the defendant in this case, it must be shown by the proof that he did put out the eye of the prosecutor, as alleged in the indictment, by willfully and maliciously striking him in the eye with the brick or other hard substance, and that it was done unlawfully—that is, without lawful excuse;" and that if he did this "from feelings of malice toward the prosecutor, *  * he would be guilty as charged."

The prisoner's counsel requested the Court to

Terrell *v.* State.

instruct the jury, in addition, that unless "the defendant did, of his malice aforethought, inflict the blow, *with purpose or intent to put out the eye or inflict some other mayhem on the prosecutor*, then the defendant would not be guilty of mayhem."

This request was refused by the Court, and that refusal is assigned as error.

Upon this action arises the inquiry: *Is a specific intent to maim a necessary element of the crime of mayhem?*

This precise question never having been decided in this State, its solution can be best arrived at by a brief review of some of the authorities and statutes upon the general subject.

"Mayhem, at common law, says Mr. East, is such a bodily hurt as renders a man less able, in fighting, to defend himself or annoy his adversary; but if the injury be such as disfigures him only, without diminishing his corporal abilities, it does not fall within the crime of mayhem." 1 Wharton's Cr. L. (9th Ed.), Sec. 581.

Anciently the judgment against the offender was that he' should suffer loss of the same member of which he had deprived his victim. *Ib.*, Sec. 583.

Or, as elsewhere more briefly expressed, "the judgment was *membrum pro membro*." 1 Russell on Cr., p. 719.

"If the plaint be made against a woman who has deprived a man of his members, she shall have judgment to lose a hand, being the member where-

with she committed the offense." 1 Britton, cited in Note 3 to Sec. 851, Bishop's Cr. Pr.

Another writer defines the offense thus: "This maiheming is a dismembering of a man, or taking away some member, or part of his bodie, or the use thereof; as, when a wound, blow, or hurt is given or done by one person or more to another person, whereby he is the lesse able to defend himselfe in time of warre, or get his liuing in time of peace." Pulton in Note 2, § 1001, 2 Bishop's Cr. L. (7th Ed.).

That a *specific intent to commit mayhem* upon the person dismembered *was not necessary to constitute the offense of mayhem* at the time he wrote is very forcibly illustrated in an example given by the author last quoted. He says: "If A. doe strike at B., and the weapon wherewith he striketh, breaking or falling out of his hand by force of the blow, doth put out the eyes of D., this shall be adjuged a maihem, for that A. hath an intention at first to doe some hurt in striking at B." *Ib.*

Mr. Roscoe, under the title, " *Proof of the intent to maim, disfigure, or disable,*" defines mayhem, and then says: " Though the primary intent of the offender be of a higher or more atrocious nature —viz., to murder—and in that attempt he does not kill, but only maims the party, it is an offense within the fourth section of the recent statute; for it is a known rule of law that if a man intend to commit one kind of felony, and, in the

prosecution of that, commit another, the law will connect his felonious intention with the felony actually committed, though different in species from that he originally intended. 1 East, P. C., 400." Roscoe's Cr. Ev., p. 733.

The same rule of evidence was applied in a case "decided upon the Coventry Act, * * which, like the 9 Geo. IV. and the recent act, contained the words, 'with intent to maim or disfigure.'" Ib.

The earlier American statutes were based more or less upon the Coventry Act. "It is 22 and 23 Car. II., C. 1 (A. D. 1670)," and enacts "that if any person or persons shall, on purpose, and of malice aforethought, by lying in wait, unlawfully cut out or disable the tongue, put out an eye, · * * of any subject, with intention in so doing to maim or disfigure him, * * that person or persons so offending * * shall be declared to be felons, and suffer death as in cases of felony, without benefit of clergy." 2 Bishop's Cr. L., § 1003.

The North Carolina act, passed in 1754, is as follows: "That if any person or persons, * * on purpose, shall unlawfully cut out or disable the tongue, put out an eye * * of any subject of his majesty, in so doing to maim or disfigure, * * the person or persons so offending * * shall be, and are hereby declared to be, felons, and shall suffer as in case of felony." Act of 1754, Ch. 15; Scott's Laws of Tennessee, p. 88.

This act is substantially the same in legal meaning as the Coventry Act, and differs from it

in language only by the omission of the phrases,
"of malice aforethought," "by lying in wait,"
"with intention," and "without benefit of clergy."

The Legislature of Tennessee, in 1801, passed a
law identical in language with the North Carolina
Act of 1754, except that from the first line it
omitted the words, "on purpose," and, in a pro-
viso, gave the offender the benefit of clergy, and
the injured party an action for damages. Acts
1801, Ch. 22, § 7; Scott's Laws of Tennessee, p. 710.

Six years later the General Assembly of this
State enacted another law with respect to the of-
fense of mayhem, in which the terms of the
Coventry Act, in the description of the offense,
were adopted almost literally; but the grade of
the crime, and the punishment therefor, were great-
ly diminished.    That act was in these words:

"That whosoever shall *on purpose*, and of mal-
ice aforethought, by lying in wait, unlawfully cut
out or disable the tongue, put out an eye, slit
the nose, ear, or lip, or cut off or disable any
limb or member, *with intention of so doing to maim
or disfigure any person* * * shall, on conviction,
be fined in a sum not exceeding $50, and be im-
prisoned not exceeding three months, for the first
offense; and for the second offense, such person
shall be fined and imprisoned in the manner afore-
said, and shall be disqualified to hold any office of
honor, profit, or trust, either civil or military,
under the authority of this State." Acts 1807, Ch.
73, § 13; Scott's Laws of Tennessee, p. 1058.

Upon the same and other subjects it was en-acted in Section 55, Chapter 23, of the Acts of 1829, that—

"No person shall unlawfully and maliciously cut off the tongue, or disable the tongue of another by clipping, biting, or wounding. No person shall unlawfully and maliciously put out an eye, slit, cut off, or bite off the nose, ear, or lip of an-other, or any part of either of them, whereby any person shall be maimed or disfigured. No person shall unlawfully and maliciously cut off or disable the hand, arm, leg, or foot of another, or any part of either of them, whereby the person so injured shall lose the proper use of any of those members. No person shall unlawfully and mali-ciously shoot or stab another. No person shall unlawfully and maliciously, by cutting or other-wise, cut off or disable the organs of generation of another, or any part thereof.

"Whoever shall commit any of the offenses men-tioned in this section shall undergo confinement in said jail and penitentiary house for a period not less than two nor more than ten years; *Proviso,* If any of said offenses shall be done in self-de-fense, or without malice aforethought, the person charged shall be excused from the operation of this section." Caruthers & Nicholson, p. 325.

Persons who, "in personal combat, bite off the finger or thumb" of their adversaries were ex-empted from the operation of this statute by Sec-tion 1, Chapter 84, Acts of 1831. *Ib.,* p. 328.

This fifty-fifth section of the Act of 1829 is the law of this State at this time, and upon its construction depends the question before us. On being carried into the Code of 1858 it was changed in form and arrangement merely, by being subdivided according to subjects, viz: Mayhem, § 4606; malicious shooting and stabbing, § 4608; and defense (the proviso), § 4609. The amendment by the Act of 1831 was made § 4607, as exceptions to the section preceding it. In the New Code (by M. & V.) these are §§ 5357, 5358, 5359, and 5360.

A marked change from the language of the former acts is readily observed in this Act of 1829; and the change is not only noticeable in the form of expression, but it is material as affecting the meaning intended to be conveyed. The former acts, after describing the injuries, followed the description with the pregnant phrase, "*with intention in so doing to maim or disfigure,*" or, "*in so doing, to maim or disfigure,*" thereby indicating, it may be said with great plausibility, that an element of the offense should be *a specific purpose or intention* in the mind of the offender *to maim or disfigure his victim,* and not to inflict some other injury upon him. These phrases are entirely omitted from the Act of 1829, and no words of the same or of similar import are substituted for them. The omission is an important one, and must have been made advisedly. The failure to include in the act words so usual in former acts could hardly

have been the result of mistake or oversight; but the inference is fair that the omission was deliberately made for the very purpose of excluding the idea that a person who puts out the eye or cuts off the tongue of another, or otherwise maims or disfigures him in any of the forms stated, may be excused from the penalty of the statute, because it may not be shown that he intended to inflict the particular injury charged and proven instead of a different one.

Whether or not the omission was in fact the result of a desire to exclude the idea mentioned, the eighty-second section repealed all existing laws within the purview of the act; and if there had been no express repeal, the omission itself would have operated as a clear repeal by implication (*The Druggist Cases*, 1 Pickle, 450; *Poe* v. *The State, Ib.*, 495; *United States* v. *Tyner*, 11 Wall., 88); and in either case the act must necessarily stand upon its own terms, which manifestly do not call for or authorize an interpretation that would include such an idea.

The words characterizing the forbidden acts are "unlawfully and maliciously." They are used alike with respect to every offense mentioned in the section, and must be given the same significance as applied to each of them. They mean the same thing when applied to mayhem that they do when applied to malicious shooting or stabbing.

"*Unlawfully*" always means without legal justification; but "*maliciously*" has different meanings,

which it is not important now to give in detail.
Its signification, as used in the fifty-fifth section of
the Act of 1829, is well stated and illustrated in
*Wright* v. *The State*, 9 Yer., 343–4.

Wright was indicted and convicted of malicious
stabbing under that section, and on appeal in error
to this Court, it was insisted, in his behalf, that
the proof did not show that degree of malice
necessary to constitute the offense charged.

Judge Turley, delivering the opinion of the
Court, said:

"It is true that the statute requires that this
offense shall be committed with malice aforethought,
by which is not meant such malice as is required
by the third section of the same act to constitute
the crime of murder in the first degree, *but malice
according to its common law signification, which is not
confined to a particular animosity to the person in-
jured, but extends to an evil design in general, a
wicked and corrupt motive, an intention to do evil.*
\* \* \* The question then arises, Is the proof
in this case of a character to justify the jury in
having found the existence of malice according to
the definition given? We consider it unnecessary
to go into a minute investigation of the testimony
on this point. It shows beyond a doubt that the
prisoner stabbed Lewis Underwood, the prosecutor.
*Upon this proof the law presumes malice.*"

With this approved interpretation, applied, as it
must be, in reference to each of the offenses
enumerated, the use of the word "maliciously," in

the statute, is shown to afford no justification for the contention 'that the crime of mayhem can be committed only when the blow is stricken for the purpose of inflicting that particular injury upon the sufferer.

The character of malice necessary to the crime of mayhem has in fact been held by this Court to be the same as that defined in the case of malicious stabbing just quoted. *Worley* v. *The State*, 11 Hum., 175. Wesley was convicted for the castration of his slave. In his defense it was shown that the slave was of very lewd character, and that his master's purpose was to reform him. Upon these facts it was argued that the necessary malice was wanting. The decision was that the act was unlawful, and that being so, malice would be implied, unless circumstances of provocation be shown to remove the legal presumption. The conviction was affirmed.

No more do the concluding words, "whereby any person shall be maimed or disfigured," imply the necessity of a fixed design to maim or disfigure, as an element of the crime. Such an implication we regard as unnatural and unwarranted by anything appearing upon the face of the act, or any sound rule of interpretation. It is true those words should be used in the indictment; that an indictment without them is bad; and it is also true that "maimed" is a word of art which the law has set apart for the description of this particular offense, and which cannot be supplied by

any other word (*Chick* v. *The State*, 7 Hum., 165); but it by no means follows from all this, that mayhem can be committed only when that specific crime is in the mind of the offender.

"In North Carolina, in the case of the *State* v. *Girkin*, 1 Iredell Rep., 121, the defendant was indicted for that he 'unlawfully, and on purpose, did bite off the left ear of one James Watson, * * * *with intent to disfigure* the said James Watson.' * * The defendant's counsel insisted, * * secondly, that it was necessary for the State to prove malice aforethought, or preconceived intention, and that *the act was done with an intent to disfigure.* The defendant was found guilty, and, after an ineffectual motion for a new trial, appealed.

"Ruffin, Chief Justice: 'Both parts of the second objection taken for the prisoner are in opposition to the cases of the *State* v. *Evans*, 1 Hay. Reps., 281, and of the *State* v. *Crawford*, 2 Dev. Reps., 425, which establish that *the intent to disfigure is prima facie to be inferred from an act which does in fact disfigure,* unless that presumption be repelled by evidence on the part of the accused of a different intent, or, at least, of the absence of the intent mentioned in the statute.'" 1 Archbold's Cr. Pr. and Pl. (8th Ed., by Pomeroy), pp. 879, 880, Note 1.

We have not had access to those cases, or the statute upon which they were decided; but enough appears from Mr. Pomeroy's full note, just quoted,

to clearly indicate that the North Carolina statute requires *a specific intent to disfigure,* and that proof of disfigurement meets even that requirement, and puts the burden of exculpating himself upon the person charged.

Upon a statute very much like our own, the Supreme Court of Texas recently held that a specific intent to maim is not necessary to constitute the crime of mayhem, and that the unlawful use of such means (a shot-gun) in the commission of the offense, as would ordinarily result in maiming, would raise a legal presumption of an intention to maim. *Davis* v. *State,* 2 S. W. R., 631.

Without further elaboration or discussion, we hold that a specific intent to maim is not, under our statute, a necessary ingredient in the crime of mayhem; and that the refusal of the Trial Judge to charge it to be so was right and proper.

It is next insisted that, even under the charge of the law as given to the jury, the verdict is not supported by the evidence.

Upon this contention the whole of the evidence has been given a very careful consideration by this Court; but it is not deemed necessary to enter into a minute statement or discussion of it in this opinion.

It is sufficient to say that the prosecutor's testimony makes a strong case of an unexpected, unprovoked, and violent assault upon him in the night time, resulting, as already stated, in the destruction of his only eye, and rendering him totally blind.

The only countervailing testimony is that of the defendant himself, introduced for the purpose of showing provocation and apprehension of danger from the prosecutor when the blow was stricken. The other testimony in the record is in conflict with his statements, and corroborative of those of the prosecutor.

We are well satisfied with the verdict. Let the judgment be affirmed.

We do not concur.

TURNEY, C. J.
SNODGRASS, J.