Zickler *v.* Union Bank and Trust Co.

ZICKLER *v.* UNION BANK & TRUST CO.

*(Nashville.    March 14,    1900.)*

1. INHERITANCE TAX.  *Brothers and sisters liable for.*

Shares in estates of decedents, excepting estates of less value than $250, passing by intestacy or testament to brothers and sisters, are, and have been ever since the passage of the general Assessment Act of 1895, liable to the inheritance tax imposed by Acts 1893, Ch. 174.  *(Post, pp. 279–304.)*

Acts construed: Acts 1893, Chs. 89, 174; Acts 1895, Ch. 4 (Ex. Sess.); Acts 1899, Ch. —.

Case cited and approved: Bailey *v.* Drane, 96 Tenn., 16.

2. STATUTES.  *Repeal and revivor.*

The provision of Acts 1893, Ch. 174, subjecting to inheritance tax the shares, among others, of brothers and sisters of the decedent, which was repealed by implication by the general Revenue Act (Ch. 89) of that year, passed at a later hour on the same day, was revived and became operative upon the repeal of said repealing Act by the general Revenue Act (Ch. 4, Ex. Sess.) of 1895.  *(Post, pp. 289–304.)*

Acts construed: Acts 1893, Ch. 89, 174; Acts 1895, Ch. 4 (Ex. Sess.).

Case cited and approved: Bailey *v.* Drane, 96 Tenn., 16.

3. SAME.  *Same.*

As a general rule, when two statutes stand in irreconcilable conflict the later one repeals or suspends the earlier one by implication to the extent of such conflict; and upon the simple repeal of the later statute the earlier one is restored to vitality.  *(Post, pp. 282, 283, 298.)*

Cases cited and approved: Bailey *v.* Drane, 96 Tenn., 16; Insurance Co. *v.* Taxing District, 4 Lea, 644; Maney *v.* State, 6 Lea, 221; Knoxville *v.* Lewis, 12 Lea, 181; Ballentine *v.* Pulaski, 15 Lea, 633; The Druggists' Cases, 85 Tenn., 450; Poe *v.* State, 85 Tenn., 495; Terrell *v.* State, 86 Tenn., 523; Hunter *v.* Memphis, 93 Tenn., 571; Shelton *v.* State, 96 Tenn., 521; State *v.* Yardley, 95 Tenn., 546.

4. SAME.   *Repeal of revenue statutes not favored.*

Repeals by implication and especially of revenue and collection statutes are not favored.   (*Post, pp. 288, 289, 298.*)

Cases cited and approved: Iron Co. *v.* Pace, 89 Tenn., 707; Durham *v.* State, 89 Tenn., 731; Burnett *v.* Maloney, 97 Tenn., 699; Bailey *v.* Drane, 96 Tenn., 16; 3 Cliff., 251.

5. SAME.   *Repeal of general revenue statutes.*

Under the practice that prevails in this State of enacting a general revenue system in a single statute, and re-enacting it, in like manner, at short intervals, with such additions and omissions as are deemed advisable, the latest general revenue statute repeals, by implication, all earlier ones, even as to matters embraced in former statutes and merely omitted from the last one.   The latest statute constitutes the whole law as regards all matters, which, under the prevailing legislative practice, may be deemed within the scope of a general revenue statute. (*Post, pp. 283–288.*)

Cases cited and approved: The Druggists' Cases, 85 Tenn., 450; Terrell *v.* State, 86 Tenn., 523; Rodemer *v.* Mitchell, 90 Tenn., 65; Poe *v.* State, 85 Tenn., 495; Maxwell *v.* Stuart, 99 Tenn., 409; State *v.* Butcher, 93 Tenn., 679; Chattanooga *v.* Neely, 97 Tenn., 527.

6. SAME.   *Same.*

But a general revenue statute does not repeal by implication an earlier statute devoted to a special subject of taxation, *e. g.*, inheritances or railroads, not mentioned in the general statute, and creating by separate and attentive consideration of the particular subject an appropriate and effective system for the taxation of that subject.   (*Post, pp. 288–301.*)

Acts construed: Acts 1893, Ch. 174; Acts 1895, Ch. 4. (Ex. Sess.)

Cases cited: Harris *v.* State, 96 Tenn., 496; Insurance Co. *v.* Taxing District, 4 Lea, 648.

FROM   DAVIDSON.

Appeal from Chancery Court of Davidson County. H.  H.  COOK,  Ch.

Attorney-general PICKLE and THOS. B. JOHNSON for Shelton.

WHITMAN & GAMBLE, JOHN A. PITTS and LELL-YETT & BARR for· Union Bank and Trust Co.

JOHN RUHM, T. B. TURLEY, and L. P. COOP-ER, for Distributees.

BEARD, J. This case involves the question whether during the year 1898 property passing by intestacy or devise to brothers and sisters, in estates in value $250 or more, was subject to the payment of a collateral inheritance tax under the laws of this State.

Catherine M. Shultz died in Davidson County, Tennessee, on August 12, 1898, a widow without issue. Her heirs and distributees were a brother and two nephews, the sons of a deceased brother. The Union Bank & Trust Company was duly appointed her administrator. The estate consists of between $40,000 and $50,000 of United States bonds and coupons, a note for about $4,500, and a small parcel of realty worth about $1,500.

Litigation arose between the administrator and certain persons by the name of Walker, involving the right of the administrator to recover a number of these bonds and coupons; and also between George Zickler and the administrator, involving the question as to whether Mrs. Shultz left a will disposing of her property in his favor. This litigation was in the Chancery Court of

Davidson County, and in August, 1899, a decree was entered in the cause, settling the rights of the parties and adjudging that the brother and nephews of Mrs. Shultz were entitled to the greater portion of her estate, and directing the administrator, after paying the costs incident to the administration, certain specified debts, and about $11,050 to Zickler, to pay the remainder to the brother and nephews; and it appearing to the Court that these beneficiaries were citizens of Germany, and, owing to their poverty, were unable to execute statutory refunding bonds, it was ordered that the administrator should pay over their share to them without exacting such bond.

In this attitude of the case the County Court Clerk of Davidson County and the State Revenue Agent, Thomas B. Johnson, presented their petition in the cause seeking to collect the inheritance tax, and asking that the final decree adjudging that the $11,050 be paid to Zickler "in full of his demands and claims as a creditor of the estate, be stricken out of the decree, for the reason that it would prejudice the State's claim for its inheritance tax." The Court declined to modify its decree, but allowed the petition to be filed. Thereupon the parties at interest interposed a demurrer to the petition, raising the question, among others, as to whether there was, in August, 1898, a statute in force imposing an inheritance tax upon funds passing to brothers and sis-

ters by devise or intestacy. The Chancellor over-ruled the demurrer and permitted an appeal to be taken to this Court.

A collateral inheritance tax was imposed in this State for the first time in the general Revenue Act of that year, being Chapter 25 of the Acts passed at the extraordinary session of 1891. This enactment is contained in Section 6, and, speaking generally, imposes an inheritance tax upon all of the assets passing by intestacy or testament to persons other than the father, mother, husband, wife, child, brother, sister, wife or widow of a son, husband of a daughter, child or children adopted in conformity with the laws of the State of Tennessee. It directs the County Court Clerks to collect the tax, and holds liable administrators, guardians, executors, and trustees for such taxes until the same have been paid.

At the next session of the Legislature (in 1893) the subject of collateral inheritance taxation was made a special subject for legislation, and an elaborate system was devised in Chapter 174 of the Acts of that session imposing this collateral inheritance tax, and providing the machinery relative to its imposition and collection. The Act embraces twenty-seven sections, and is a full and complete enactment upon the entire subject, and forms within itself a complete system of taxation upon the subject of the imposition and collection of collateral inheritance taxes; and

Section 25 of this Act expressly repeals Section 6 of Chapter 25 of the Acts of the Extra Session, 1891. This Act was passed upon the last day of the session, and upon the same day the Legislature passed a general revenue law imposing privilege taxes, being Chapter 89 of the Acts of that session; and in Section 7 of that law a collateral inheritance tax was imposed. Section 7 of this Act was copied almost literally from Section 6 of Chapter 25 of the Acts of the Extra Session of 1891, the only difference being that the word "grandfather" is added to the exceptions in Section 7 of the Act of 1893.

In Section 7 of the general Revenue Act of 1893 funds passing to brothers and sisters by devise or intestacy, were excepted from the tax imposed, but were not excepted by the provisions of Chapter 174, Acts of 1893, being the general collateral inheritance tax law.

In the case of *Bailey* v. *Drane,* 96 Tenn., 16, it was held by this Court that in this respect the two Acts of the Legislature of 1893 were inconsistent, and that the general revenue law, having been passed at a later hour in the day than the general collateral inheritance tax law, the exception in the general Revenue Act should prevail. and that, therefore, construing the two Acts together, the collateral inheritance tax could not be imposed upon funds passing to brothers and sisters. In that case we said: "The two Acts

are repugnant and irreconcilably conflicting upon this particular point, and, being so, the latter one repeals the former, by implication, to the extent of that repugnance and conflict." Citing *Insurance Co.* v. *Taxing District* 4 Lea, 644; *Maney* v. *State,* 6 Lea, 221; *Knoxville* v. *Lewis,* 12 Lea, 181; *Ballentine* v. *Pulaski,* 15 Lea, 633; *The Druggist cases,* 85 Tenn., 450; *Poe* v. *State, Ib.,* 495; *Terrell* v. *State,* 86 Tenn., 523; *Hunter* v. *Memphis,* 93 Tenn., 571; *Shelton* v. *State,* 96 Tenn., 521; *State* v. *Yardley,* 95 Tenn., 546.

In the general Revenue Acts of 1895 and 1897 no mention was made of a collateral inheritance tax. The general Revenue Act of 1899, in Section 1, declares "that there shall be levied and collected a collateral inheritance tax as provided for in Chapter 174 of the Acts of 1893." The present claim, however, originated before the Act of 1899, and therefore can obtain no support from it.

The first question to be determined, therefore, is whether the general Revenue Act of 1895 repealed all of the provisions of the general Revenue Act of 1893; and the second is, if the general Revenue Act of 1895 does repeal the general revenue law of 1893, was the general collateral inheritance tax law—Chapter 174 of the Acts of 1893—thereafter in full force and effect? Both these questions must be answered in the

affirmative in order to maintain the contention of the petitioners.

Prior to the session of 1881 the Legislature had at different times passed various laws with respect to declaring different occupations to be privileges, and taxing them as such; yet there was never any effort prior to that time to frame a general law upon the subject of privilege taxation. But at that session of the Legislature such a law was enacted, and the different Acts upon the subject were embodied in it, and from 1881 to the present time the Legislature, at each succeeding session, has passed what is known as a general revenue law, in which the various occupations declared to be privileges are taxed, and by sections embracing language applicable to all privileges, the collection of the taxes imposed is provided for. With one or possibly two exceptions each succeeding Legislature has pursued the policy of redrafting and re-enacting a new general revenue law, instead of amending the old law; and it may be said that it has now grown into a legislative custom to enact a new revenue law at each succeeding session, embracing generally the entire subject of privilege taxation.

The general revenue law of 1881 repeals generally all laws and parts of laws in conflict, but does not specifically repeal any law upon the subject. And so with each succeeding general revenue law, no specific law is repealed, but all

laws and parts of laws in conflict are repealed. Coming now to the general revenue law of 1895, we find that it is a general law upon the subject of privilege taxation, and manifests the legislative purpose of dealing with the subject of such taxation in a manner in keeping with the policy pursued by prior Legislatures upon the subject. Of the sixty-seven occupations embraced in the Act, upon which a privilege is imposed, twenty of them were taken literally from the Revenue Act of 1893. Certain additional privileges are added, and some embraced in the former Act are entirely omitted in the latter Act, so that the new law is merely a revision of the old law upon the same subject. And it is perfectly manifest that the Legislature, in passing the general revenue law of 1895, intended that it should take the place of the general revenue law of 1893.

Under the well-recognized principles of interpretation of statutes, we are of opinion that the general revenue law of 1895 repeals by implication the general revenue law of 1893, and that whatever was omitted in the new law was intended to be discarded. The legislative intent was to prescribe the provisions contained in the Act of 1895 as the only ones on that subject which should be obligatory, and that whatever parts of the old Act were omitted in the new Act were intended to be repealed. This is not a new in-

terpretation, but has many times been before this and other Courts for judicial consideration.

*The Druggist cases,* 85 Tenn., 450, are authority for the following proposition: "Where an Act prohibiting the sale of liquor by druggists except in certain specified cases is substantially re-enacted by a subsequent statute, omitting some of the exceptions of the former Act, and containing a clause repealing all laws in conflict, the omitted sections stand repealed, both expressly and by necessary implication."

In *Terrell* v. *The State,* 86 Tenn., 523, it is ruled that "a statute purporting to cover an entire subject repeals all former statutes upon the same subject, either with or without a repealing clause, and notwithstanding it may omit material provisions of the earlier statutes." See, also, *Rodemer* v. *Mitchell,* 90 Tenn., 65; *Poe* v. *The State,* 85 Tenn., 495; *Maxwell* v. *Stuart,* 99 Tenn., 409; *State* v. *Butcher,* 93 Tenn., 679; *Chattanooga* v. *Neely,* 97 Tenn., 527.

The authorities elsewhere are in entire accord with the views above expressed. Mr. Black, in his work on Interpretation of Laws, on page 116, embodies in his text the following statement from *Roche* v. *Mayor, etc.,* 40 N. J. L., 257: "The rule does not rest strictly upon the ground of repeal by implication, but upon the principle that when the Legislature makes a revision of a particular statute and frames a new statute upon

the subject-matter, and from the framework of the Act it is apparent that the Legislature designed a complete scheme for this matter, it is a legislative declaration that whatever is embraced in the new law shall prevail, and whatever is excluded is discarded. It is decisive evidence of an intention to prescribe the provisions contained in the latter law as the only ones on that subject which shall be obligatory. When a statute is revised, or one Act framed from another, some parts being omitted, the parts omitted are not to be revived by construction, but are to be considered as annulled."

Mr. Endlich, in his work on Interpretation of Statutes, Sec. 302, sums up the law as follows: "But the general rule seems to be that the statutes and parts of statutes omitted from a revision are to be considered as annulled, and are not to be revived by construction."

In *Butler* v. *Russell*, 3 Cliff., 251, it is held that when a revising statute covers the whole subject-matter of antecedent statutes it virtually repeals the former enactments without any express provision to that effect.

In *Bartlett* v. *King*, 12 Mass., 536, it is said: "A subsequent statute revising the whole subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must on the prin-

ciples of law, as well as in reason and common sense, operate to repeal the former."

Indeed, the proposition is not combatted by counsel upon either side of the record. Both sides invoke the same principles of statutory construction; both cite substantially the same cases; and both agree that the general revenue law of 1895 repeals by necessary implication *in toto* the general revenue law of 1893, and that the Legislature intended that the general revenue law of 1895 should take the place of and be a substitute for the general revenue law of 1893, and we so hold.

But while we hold on this well-settled rule of statutory interpretation that the general revenue law of 1895 repeals by implication all of the provisions of the general revenue law of 1893, including that with regard to a collateral inheritance tax, yet this does not determine the effect which the failure of the Legislature to mention the subject of collateral inheritance tax in the general revenue law of 1895 had upon Chapter 174, Acts of 1893. For it does not necessarily follow, from what has been said, that because the Revenue Act of 1895 is a general law upon the subject of privilege taxation, that it impliedly repeals the general collateral inheritance tax law contained in Chapter 174 of the Acts of 1893. Nor, indeed, are the general rules of interpretation which we have quoted with approval to be accepted without qualification or exception. The

exceptions to these general rules of interpretation are as distinct and as well defined as are the rules themselves; one of these exceptions being that repeals by implication of revenue and collection laws are not favored. *Butler* v. *Russell,* supra.

We proceed, therefore, to the consideration of the question whether Section 7 of the Revenue Act of 1893, being repealed by implication by the Revenue Act of 1895, left no collateral inheritance tax law in force after this latter Act took effect.

As has heretofore been stated, Chapter 174 of the Acts of 1893, containing twenty-seven sections, embraces within itself a complete system of taxation upon the subject of the imposition and collection of a collateral inheritance tax. And if Section 7 had not been contained in the general revenue law of 1893, the present question could scarcely have arisen. For it was the evident intention of the Legislature, by Chapter 174, to take out of the general revenue law the entire subject of a collateral inheritance tax, and to treat it as a separate and distinct subject of taxation in a separate and independent enactment; and why on the day of the passage of this Act a provision was embodied in the general revenue bill covering an inheritance tax we cannot certainly determine. It may be, as is surmised or suggested in argument, that the author of Chapter

20 P—19

174 entertained doubts of the ultimate passage of his bill, and desirous of accomplishing something in that direction, induced the committee having in charge the general revenue bill to embrace in it this provision. How this is cannot be certainly known, but the fact remains that the Legislature did provide in Chapter 174 a detailed and independent system for the levy and collection of this tax; and the wisdom of so doing is apparent. The subject was complicated, and one requiring much,˙ and to this State new, legislation to perfect its operation. Precisely in the same way the Legislature deemed the assessment of railroad properties of such a peculiar character, and requiring so many special provisions applicable alone to that particular class of property, that it was thought wise to separate it from the general assessment law, and to enact a special system applicable alone to the property belonging to this class. And so it was held by this Court, in the case of *Harris* v. *The State,* 96 Tenn., 496, that the statutes relating to the assessment of the distributable property of railroads constituted a system adapted alone to that class of property, and such property was not in any manner controlled by the general assessment laws of the State.

Chapter 174 of the Acts of 1893 was in no sense repealed by the general revenue law of 1893, nor did we so hold in the case of *Bailey*

v. *Drane,* 96 Tenn., 16. In that case it was merely held that there was a conflict between one particular clause in the general revenue law and a particular clause in the general collateral inheritance tax law, and that, in so far as these two Acts were repugnant and conflicting, effect would be given to the last enactment of the Legislature. The language of the Court in that case was limited to the particular point of repugnancy or conflict. But because there was a conflict upon one point, it by no means follows that Chapter 174, covering the entire subject of collateral inheritance tax, was repealed by the revenue Act. In fact and in law it was not repealed except in the one particular point.

The only effect the conflict between the two Acts could have was, that so long as both were in force, one or the other must give way and remain inoperative during the life of the other. Thus, so long as the general revenue law of 1893 remained in force, the conflicting provisions in Chapter 174 of the Acts of' 1893 remained suspended or inoperative. It was not repealed in the proper sense of the term; it was merely suspended, and the language of Judge Cooper, in *Home Insurance Co.* v. *Taxing District,* 4 Lea, 648, is peculiarly applicable to the question under consideration. In that case the Court said:

"Strictly speaking, the new statute does not repeal the old statute, however inconsistent with it.

It is a mere form of expressing the result to say that the one repeals the other by implication. The prior Act is not repealed, but rendered inoperative, and this is made plain by the fact that a direct repeal of the later Act, without any reference to the former, will, by a rule of the common law, give efficacy to the former. It was precisely because the old Act never was repealed that it thereby became operative. It is a convenient, though inaccurate, use of language to say that the new law repeals the old, and that the repeal of the new law revives the old. More properly, the new Act is an obstacle to the operation of the old Act, which obstacle is removed by its repeal."

This language has met with criticism in the argument of this case; but we think that the criticism is not warranted, and that the language used is entirely correct.

In Sutherland on Statutory Construction, Sec. 162, precisely the same idea is expressed. There it is said:

"The general rule is that when an Act of the Legislature is repealed without a saving clause, it is considered, except as to transactions past and closed, as though it had never existed. This is not true in an absolute sense, nor without exception, unless it is proved that the repealed statute cannot be revived by the repeal of the repealing statute. The repealed law is indefinitely suspended

while the repealing statute is in force. When that statute is repealed, its repealing force is spent, and the one which is repealed thereupon comes again into operation. This revival would not ensue if the repeal had the effect of absolute extinguishment."

Again, it is contended in argument that the revenue law of 1895, being a general law upon the subject of privilege taxes, repealed by implication not only the general revenue law of 1893, but also the special system devised by the Legislature in a special Act relating to a collateral inheritance tax, counsel relying upon the general rule of interpretation that the special statute is repealed "where the latter Act revises, amends, and sums up the whole law on the particular subject to which it relates, covering all the ground treated on in the earlier statute, and adding new or different privileges, and thus plainly shows that it was intended to supersede any and all prior enactments on that subject-matter, and to furnish for the future, in itself alone, the whole and only system of statute law applicable to that subject."

In Sutherland on Statutory Construction, Sec. 157, in speaking of the general rule that a general law will not impliedly repeal those which are special or local, the following language is used:

"When the legislator frames a statute in general terms, or treats a subject in a general man-

ner, it is not reasonable to suppose that he in-
tends to abrogate particular legislation to the de-
tails of which he had previously given his atten-
tion, applicable only to a part of the same sub-
ject, unless the general Act shows a plain in-
tention to do so." Citing as authority: *Crow
Dog, ex parte,* 109 U. S., 556; Dwarris on
Stat., 532; Sedgw. St. and Const. L., 98; *State
v. Judge of St. Louis,* P. Ct., 38 Mo., 529;
*Brown* v. *County Commissioners,* 21 Pa. St., 37;
*State* v. *Treasurer,* 41 Mo., 16, 24; *Frosdich* v.
*Perrysburg,* 14 Ohio St., 472; *Robbins* v. *State,*
8 Ohio St., 131, 191; *Williams* v. *Pritchard,* 4
T. & R., 2; *Fitzgerald* v. *Champneys,* 30 L. J.
Ch., 782 (S. C., 2 Johns. & H., 31).

In the first case cited, the Supreme Court, in
quoting with approval from *Fitzgerald* v. *Champ-
neys,* uses this language:

"The rule is *generalia specialibus non derogant.*
'The general principle to be applied,' said Bo-
vill, C. J., in *Thorpe* v. *Adams,* L. R., 6 C.
P., 135, 'to the construction of Acts of Parlia-
ment is that a general Act is not to be con-
strued to repeal a previous particular Act, unless
there is some express reference to the previous
legislation on the subject, or unless there is a
necessary inconsistency in the two Acts standing
together.' 'And the reason is,' said Wood, V. C.,
in *Fitzgerald* v. *Champneys,* 30 L. J. Ch., 782
(2 Johns. and H., 31-54), 'that the Legislature,

having had its attention directed to a special subject, and having observed all the circumstances of the case, and provided for them, does not intend by a general enactment afterwards to derogate from its own Act when it makes no special mention of its intention so to do.' The Court then adds, 'The nature and circumstances of this case strongly reinforce this rule of interpretation in its present application.' "

It is insisted in argument that the exception to the general rule is limited to special or local Acts, and that the rule of *generalia specialibus non derogant* does not apply in this case, because Chapter 174 of the Acts of 1893 is not a special or local statute, since it deals with the subject of privilege taxation, and the title to the general revenue law showing that it embraces the entire subject of revenue, includes the matter of Chapter 174 of the Acts of 1893. It is further insisted that before the Act can be a special or local law, it must apply to a special subject, or be local; and *Burnett* v. *Malony,* 97 Tenn., 699, is cited as a type of what is meant by a special or local law. In that case the Legislature, having passed a local law authorizing Knox County to issue bonds to construct a bridge and levy taxes to pay the bonds, it was held that the general revenue law, passed at a later day of the session limiting the amount of the levy of a county tax, did not repeal by implication

this local or special law. But this type of a special or local law is not the only one contemplated in the exception to the general rule. The same argument was made to the Supreme Court in the case of *Union Pacific · Railway* v. *Ryan,* 113 U. S., 516. That case involved the question whether the passage of a general law providing the method by which railroad property should be assessed for taxation, impliedly repealed a provision in the charter of the city of Cheyenne, authorizing an assessment of railroad property for city purposes. The argument of counsel for the city in that case, and the reply of the Court to the same, is thus stated:

"They (counsel for the city) contend that the language of the city charter is very broad, authorizing the corporation to assess every kind of taxable property situated within the county bounds, and that this includes railway property; and they insist that this law must stand until it can be shown to be repealed; that the railroad assessment law does not repeal it in express terms; and cannot be construed to repeal it by implication, because the city charter is a special law, intended for the particular locality, and will not be repealed by implication by any general law containing contrary provisions, unless the law will be expressed in such universal terms as necessarily to include every particular case; that such universal terms are not used in the law; but on the contrary,

whilst other subordinate territorial divisions are included by name, corporate cities or municipalities are not mentioned or alluded to. This is a summary of the defendants' argument. It is certainly plausible, and entitled to careful consideration.

"First, as to the relative character of the two statutes: Is it true that the one is a special statute and the other a general one, in the sense contended for? The city charter is special, as it relates to a single district or municipality; but the Railroad Assessment Act is quite as special, as relating to a single subject of taxation. The one gives general powers of assessment and taxation to the city; but the other directs that railroad property shall be assessed and valued by the Board of Equalization in a particular way. Is not the last law even more special in character than the first?"

And so it is in this case. While the subject of the general revenue law is revenue, and pertains generally to the subject of privilege taxation, yet the title and the body of Chapter 174 of the Acts of 1893 relate to a special subject of taxation, and is a special law in the sense and meaning that it is intended to apply alone to the subject of a collateral inheritance tax, and to no other species or subject of taxation. The question here presented is in principle identical with the question presented to the Supreme Court

in the case above cited; and the subject of taxation, being such a broad and comprehensive term, is peculiarly subject to the exception to the general rule of repeals by implication. Unless we give to the exception a broad and liberal meaning in the interpretation of all statutes relating to the revenues of the State, we cannot carry out the legislative intent. While we have held that the passage of a general revenue law repeals by implication all former general revenue laws, we do so because it is the manifest purpose and intent of the Legislature that this shall be the result, and is well sustained by the general principles of interpretation of statutes.

But repeals by implication have never been favored by this Court except in clear cases. We quote the following from *Durham* v. *The State,* 89 Tenn., 731: "As an illustration of the conservatism of this Court in declaring repeals by implication, the case of *Cate* v. *The State* is in point. It is also an important instance of the survival of an old Act, notwithstanding subsequent legislation upon the same subject largely affecting and changing parts of the old law."

It will also be observed in the case of *Bailey* v. *Drane,* supra, the Court said: "The two Acts are repugnant and irreconcilably conflicting upon this particular point, and, being so, the later one repeals the former by implication to the extent of that repugnance and conflict."

All rules of interpretation have for their purpose but one end, and that is to ascertain the legislative intent. Mr. Endlich on Interpretation of Statutes, Secs. 72-295, used this language:

"In a word, then, it is to be taken as a fundamental principle, standing, as it were, at the threshold of the whole subject of interpretation, that the intention of the Legislature is invariably to be accepted and carried into effect, whatever may be the opinion of the judicial interpreter of its wisdom and justice." See, also, *Butler* v. *Russell,* supra.

With these general rules of interpretation in mind, the Court, in *Iron Company* v. *Pace,* 89 Tenn., 707, held that provisions contained in a special Act upon the subject of reassessment intended for the benefit of the taxpayer, were not impliedly repealed by the general assessment law subsequently passed, although the general subject of reassessments was embraced within the provisions of the general assessment Act. We held that, looking to the purposes of the Legislature as disclosed by its enactments, it was clear that while the general assessment law was intended to embrace the general subject of the assessment and reassessment of property, yet it did not intend to impliedly repeal these special statutes upon the same subject intended for the protection of the taxpayer in having a fair valuation placed upon his property, and providing for him means by

which he could have the valuation re-examined and corrected, if erroneous. And so in this case, we are of opinion that the legislative enactments show a clear and manifest intention upon the part of the Legislature to preserve the collateral inheritance tax as a distinct and separate system from the general subject of privilege taxation; and that the manifest purpose of the Legislature in omitting from the general revenue law of 1895 any mention of the collateral inheritance tax was to leave intact a system upon the subject so carefully devised in Chapter 174 of the Acts of 1893. We also hold that where the Legislature revises and re-enacts a general revenue law, it is intended to repeal by implication the preceding general revenue law, and that this intention is so manifest upon the face of the legislative enactment that we can but yield obedience to this manifest intention, regardless of whether our opinion of the policy involved be favorable or unfavorable. But while yielding obedience to this manifest intention of a repeal by implication, we must steadily keep in mind the well recognized exception to the general rule of repeals by implication, and give full force and effect to the manifest purpose of the Legislature in taking out of the general subject of privilege taxation a specific subject, concerning which a special system of taxation is devised and placed upon the statute books for the guidance of its officers in-

trusted with the collection of the revenue so imposed.

Before concluding, it is proper to refer to some of the authorities relied on by appellants. It would be impossible within reasonable limits to review them seriatim; it is sufficient to say an examination discloses that in each it was the endeavor of the Court, under sound rules of construction, to ascertain the intention of the Legislature, and, when ascertained, to carry it out. We will, however, in this opinion, consider two or three cases pressed with much confidence by the counsel of appellants.

*Butler* v. *Russell,* supra, already cited by us for several propositions, is one of these cases which, it is insisted, is on all fours with the one at bar, and irreconcilable with the conclusion reached by us. That was a suit by an importer of worsted, mohair, etc., cut in sizes and patterns for shoes, etc., to recover from the collector of the port of Boston, duties on these goods alleged to have been wrongfully exacted from him.

By a section of the Act passed in 1862 regulating import duties, goods manufactured of worsted, mohair, etc., were divided into two classes for purpose of revenue, those in one class to pay a duty of fifty per centum *ad valorem,* and those in the other class a duty of ten per centum *ad valorem.* In 1864 another revenue Act was passed, which in its fifth section, in exact lan-

guage, reproduced the section of the Act of 1862 just referred to, both in classification and rates of duty.

The plaintiff was an importer of goods of the second class, and, all else out of the way, would have been required to pay a duty of ten per centum per annum. But in 1867 Congress, in express terms, repealed so much of section five of the Act of 1864 as created this second class. So the collector, treating this repeal as a destruction of the class, exacted from this importer, on such goods as were brought into this country after this repeal, a duty of fifty per centum *ad valorem;* to recover the alleged excess of forty per centum thus paid that suit was instituted. It was insisted for the importer that the effect of this repealing statute of 1867 was to revive so much of the Act of 1862 as provided for a second class in these goods with the import rate of ten per centum. To this contention, after laying down the rules of statutory construction already recognized by us, Justice Clifford replied: "Undoubtedly the general rule is that by a repeal of a repealing statute the original statute is revived, . . . but the rule, like most other general rules, is subject to important . . . exceptions. Much depends . . . upon the intention of the Legislature, and it is equally well-settled that the rule that the statute may be revived by implication or construction cannot operate

upon any part of an Act which has been expressly altered by subsequent legislation." Citing Smith Com. Law, 909; Chancellor's case, 1 Bland, 663; *Wheeler* v. *Roberts,* 7 Cow., 536.

The learned Justice then held that a Court would not convict Congress of the absurdity of expressly repealing the later Act, with the intention of reviving the earlier one in the "exact same words." He added: "Such conclusion would be unreasonable, as it supposes that Congress desired to render complex what was plain and unambiguous, which is past belief and positively absurd." So the Court maintained the contention of the government, and not that of the plaintiff, as is erroneously assumed by counsel for appellant.

We think this statement clearly distinguishes that case from the one at bar. If the Legislature of 1895 had expressly repealed that part of the general revenue Act of 1893 which had repealed by implication (*Bailey* v. *Drane,* supra) the corresponding clause in Chapter 174 of the Acts of 1893 with regard to a collateral inheritance tax, then with great force it could be argued here, as was held in that case, to hold in the face of such express repeal, that the Legislature intended thereby to revive the clause in question, would be to convict it of legislative folly, which the Court would not do. But in

the absence of an express repeal that case cannot be invoked as authority.

In *Moody* v. *Scammons,* 46 Mich., 74, and in *Gordon* v. *City of Oshkosh,* 31 Wis., similar legislative conditions existed, and they were ruled as was done in *Butler* v. *Russell,* supra. In the latter case there was a constituent which did not exist in either of the others, and that is, there existed in Wisconsin a statutory provision that the repeal of a repealing Act should not be deemed to revive the original Act.

We will not consume further time or space in the argument of the case. We are entirely satisfied with the views hereinbefore expressed.

The cause is therefore remanded at the cost of the appellants for further proceedings in accordance with this opinion.