Knox v. Emerson.

W. N. KNOX, *Clerk, v.* LILLIE WILLIAMS EMERSON *et al.*

(*Knoxville.*    September Term, 1910.)

1. **INHERITANCE TAXES.**  **Statutes forming a complete system for the imposition and collection thereof.**

The statute contained in Acts 1893, ch. 174, embraced, as far as it went, within itself, a complete system of taxation upon the subject of the imposition and collection of a collateral inheritance tax, which is supplemented by Acts 1909, ch. 479, sec. 20, imposing a tax upon certain inheritances not taxed under the former law.  (*Post, pp.* 413, 418.)

Acts cited and construed:  Acts 1893, ch. 174; Acts 1909, ch. 479, sec. 20.

Case cited and approved:  Zickler v. Bank, 104 Tenn., 277, 289.

2. **SAME.**  **Same.**  **Jurisdiction in county court for collection thereof, either by notice or bills as in chancery.**

The tax imposed, by Acts 1909, ch. 479, sec. 20, upon inheritances not taxed by Acts 1893, ch. 174, may be collected in the same mode as provided, in said previous statute, for the collection of the tax thereby imposed; that is, either by notice given by the clerk of the county court requiring the interested parties, or tax debtors, to appear before the county court, and show cause why the tax should not be paid, or by bill filed by said clerk in that court to enforce the collection, to be proceeded with as a bill in chancery.  (*Post, pp.* 413, 414.)

Acts cited and construed:  Acts 1893, ch. 174, secs. 1 and 15; Acts 1909, ch. 479, sec. 20.

3. **SAME.**  **Same.**  **Same.**  **Is a privilege tax, and the county court has jurisdiction for its collection under Acts 1907, ch. 602, sec. 28.**

The statute (Acts 1907, ch. 602, sec. 28), conferring upon the county courts jurisdiction to try and determine, among others,

cases involving delinquent privilege taxes, operates to give those courts jurisdiction of proceedings or suits to collect the inheritance, because it is a privilege tax, a burden constitutionally imposed upon the right of acquiring property by succession. (*Post, p.* 414.)

Acts cited and contrued: Acts 1907, ch. 602, sec. 28.

Case cited and construed: State v. Alston, 94 Tenn., 674.

4. **STATUTES.** Revenue statutes must be fairly construed to effect the intended end.

A revenue statute, either general or special, must receive a fair construction, to effect the end for which it was intended. (*Post, p.* 415.)

Cases cited and aproved: Mills v. Thurston Co., 16 Wash., 378; Hubbard v. Brainard, 35 Conn., 563; Cornwall v. Todd, 38 Conn., 443.

5. **CONSTITUTIONAL LAW.** Statutes to be construed in favor of their constitutionality.

Where a statute is susceptible of two interpretations, one of which sustains its constitutionality and the other defeats it, the court will adopt that view which saves it. (*Post, p.* 415.)

6. **STATUTES.** Construed to ascertain legislative intent; construction to give effect to intention rather than defeat it.

In every case, the cardinal rule is to ascertain the legislative intention; and, where the language under proper canons of construction will permit, to give effect to that intention, rather than disappoint it by too strict an adherence to the letter of the statute. (*Post, p.* 415.)

7. **TAXATION.** Succession tax is not a burden on property, but a privilege tax for receiving property from another.

A succession tax is not a burden imposed upon property, but is a privilege tax imposed upon the right of taking property from another, whether by will or devolution as a matter of law. (*Post, p.* 415.)

Case cited and approved: State v. Alston, 94 Tenn., 674.

Knox v. Emerson.

8. INHERITANCE TAXES. Statute taxing "inheritances" in-
   cludes the succession to all the property of a decedent, whether
   under will or under the law.

   The statute (Acts 1909, ch. 479, sec. 20), imposing a tax upon in-
   heritances not taxed under Acts 1893, ch. 174, which taxed in-
   heritances except those passing to "father, mother, husband,
   wife, children, and lineal descendants," imposes a tax upon the
   passing of property to a child under the will of a parent, and is
   not limited to a tax on property passing by operation of law;
   for the word "inheritance," as used in said statutes, means the
   succession to all the rights of a decedent, both in realty and
   personalty, whether by will or by operation of law. (*Post, pp.*
   413-418.)

   Code cited and construed: Sec. 685 (S.); sec. 597 (M. & V.);
   sec. 538 (T. & S. and 1858). The provision referred to and
   construed is in Shannon's Code only, and not in the others.

   Acts cited and construed: Acts 1893, ch. 174; Acts 1909, ch. 479,
   sec. 20.

   Cases cited and approved: Swanson v. Swanson, 2 Swan, 446;
   Zickler v. Bank, 104 Tenn., 277.

9. SAME. Attorney successfully prosecuting suit for taxes under
   Acts 1909, ch. 479, sec. 20, instituted as required by Acts 1893,
   ch. 174, is entitled to a fee to be paid by the delinquent.

   The attorney of the clerk of the county court who institutes suit
   in accordance with the requirements of Acts 1893, ch. 174, and
   successfully prosecutes the suit for such clerk, to recover the
   inheritance tax imposed by Acts 1909, ch. 479, sec. 20, which is
   but a supplement to said Acts 1893, ch. 174, imposing inherit-
   ance taxes, is entitled to a fee for his services, to be paid by
   the delinquent. (*Post, p.* 418.)

   Acts cited and construed: Acts 1893, ch. 174; Acts 1909, ch. 479,
   sec. 20.

Knox v. Emerson.

FROM McMINN.

Appeal from the Circuit Court of McMinn County. GEORGE L. BURKE, Judge.

ATTORNEY-GENERAL CATES and E. B. MADISON, for plaintiff.

EUGENE E. IVINS, for defendants.

MR. JUSTICE BEARD delivered the opinion of the Court.

This suit was instituted in the county court of McMinn county, by the clerk of that court, to recover an inheritance tax, alleged to be due upon the estate which the defendant Lillie Williams Emerson takes under the will of her mother, who died a citizen of that county in May, 1909. Two questions are raised to defeat the recovery sought—first, that the county court was without jurisdiction to try the case; and, second, that being a child of the testatrix, and taking under her will, Mrs. Emerson was not subject to this tax.

As to the first of these questions, we think there is no difficulty. The tax claimed, if due at all, is provided for in section 20, c. 479, of the Session Acts of 1909 of the general assembly of the State. In that section it is enacted "that inheritances not taxed under the present law shall pay tax as follows: . . . To be collected by the county court clerk of each county."

It will be seen, upon reference to this act, that no specific mode is marked out, and no particular forum is designated, by and in which this tax shall be collected; the legislature evidently assuming, and we think properly, that these matters had been covered elsewhere. Chapter 174 of the Session Acts of 1893 embraced, as far as it went, "within itself a complete system of taxation upon the subject of the imposition and collection of a collateral inheritance tax." *Zickler* v. *Union Bank & Trust Co.,* 104 Tenn., 277, 289, 57 S. W., 341, 344. By the first section of that act there were excluded from its operation the "father, mother, husband, wife, children, and lienal decendants" entitled to the estate of the party dying, either testate or intestate. By section 15 the duty of collecting a delinquent collateral inheritance tax is imposed upon the county court clerk, and two modes for discharging this duty are prescribed—one, by notice to the parties in interest, requiring them to appear before the county court and show cause why the tax should not be paid; and the other, by filing a bill in that court to enforce its collection, "to be proceeded with after the manner of chancery suits."

Section 20 of chapter 479 of the Acts of 1909 is a repeal, by implication, of so much of the act of 1893, as exempted from the payment of the collateral inheritance tax the parties already named, and placed on them a burden common to all others who took from deceased persons. This section of the act of 1909 comes as a supplement to that of 1893, without so describing itself, and simply widens the collateral inheritance tax system. The

two acts, in regard to the tax in question, are in *pari materia,* and no question is suggested why the remedy and forum for its enforcement, adopted in this case, are not warranted by section 15 of the Act of 1893.

If this view, however, were unsound, we think of course here pursued in authorized section 28 of chapter 602 of the Acts of 1907, where the county courts of the State are given jurisdiction to try and determine, among others, cases involving delinquent privilege taxes, as there can be no doubt that the collateral inheritance tax is a privilege tax, a burden constitutionally imposed upon the right of acquiring property by succession. *State* v. *Alston,* 94 Tenn., 674, 30 S. W., 750, 28 L. R. A., 178.

The main reason, however, urged by Mrs. Emerson for resisting this recovery, is that, as she takes her estate under the will of her mother, she is not within the terms of section 20, chapter 479, which imposes a privilege tax upon "inheritances not taxed under previous laws;" her insistence being that the word "inheritances" is to be restricted to cases of devolution of property by operation of law, the owner having died intestate.

It may be observed at this point, if the construction thus insisted upon be necessarily adopted, then there might arise the serious constitutional objection that this was class legislation, arbitrary in its nature, as there could be found no reason why a child, for illustration, taking by inheritance, should be onerated with this tax, while another, taking under a will, would be relieved. It is impossible to believe that the legislature

intended to make such an offensive and unreasonable distinction, and the question is:     Have such terms been used in this section as to require the courts to hold with the present contention?

While there is much conflict in the authorities as to whether revenue statutes, either. general. or special in their nature, shall be given a liberal or strict construction, there can be no difference of opinion, at least, that they should receive "a fair construction, to effect the end for which they were intended." *Mills* v. *Thurston Co.*, 16 Wash., 378, 47 Pac., 759; *Hubbard* v. *Brainard*, 35 Conn., 563; *Cornwall* v. *Todd*, 38 Conn., 443; *Cooley on Tax.* 372 .And there is as little doubt that, where a statute in susceptible of two interpretations, one of which sustains its constitutionality and the other defeats it, the court will adopt that view which saves it.

In every case the cardinal rule is to ascertain the legislative intention, and, where. language under proper canons of construction will permit, to give effect to that intention rather than dissapoint it by too strict an adherence to the letter.

In arriving at the meaning of the statute under consideration, it is proper to remember that a succession tax is not a burden imposed upon property, but is a privilege tax upon the right of taking property from another, whether by will or devolution as a matter of law. *State* v. *Alston*, supra.    In the opinion in that case by Wilkes, J., a brief history of such laws to be found. It is agreed by all the authorities that if the inheritance tax had not its origin in the civil law, yet

from it this tax found its way into England and many of the States of this country. In *Swanson* v. *Swanson,* 2 Swan, 446, the contention was that a special act of the legislature legitimatizing two children and enabling them to "inherit" from their puntative father "as if they had been born in lawful wedlock" was restricted in character, and, while it let them in as heirs to the real estate of their deceased father, it did not entitle them to participate as distributees in his personal property. With regard to this contention the court said: "The words 'inheritance' and 'heirs,' in their technical sense, relate to the right to succession to the real estate of a person dying intestate. And, when used in a statute, as well as in a will, or other instrument, they will be taken to have been employed in their legal sense; but a clear intention to the contrary will repel this presumption, and control the legal operation of words, however technical. . . . As our notion on the subject of legitimacy is derived in a great measure, from the civil law, there is much plausibility in the suggestion that the words 'inheritance' and 'heir,' in the acts above referred to, were intended to be understood in the sense of that law. Among the civilians, by 'inheritance' is understood the succession to all the rights of the deceased; and the title 'heir' is applied indiscriminately to every person called to the succession, and he is entitled to all the estate of the deceased, whether it be real or personal. Story on Conflict, section 507." After giving illustrations from text-writers of how the term "heir" had been held as descriptive of the person to take per-

sonal as well as real property of the deceased, the court
added: "It is not allowable to suppose that the legis-
lature deliberately intended to bestow upon the
natural children the more important privilege and ca-
pacity of taking by inheritance the real estate of their
father, and to deny them the less valuable right of suc-
cession to his personal estate; or, in other words, to
make such children legitimate for the one purpose, and
leave them illegitimate as to the other." So, notwith-
standing the fact the words "to inherit" had a tech-
nical meaning, which would limit the inheritable
capacity of these children to real estate, yet it was
held that in this statute they had a broader meaning,
and their effect was to let them into succession of both
the real and personal estate of their adoptive parents.

Coming to us from the civil law, it is proper, there-
fore, as was done in the Swanson Case, to look to that
law in order to ascertain the meaning attached by it to
the word "inheritance"; and in doing so it is found, as
is stated in that opinion, to be "the succession to all the
rights of the deceased. It is of two kinds—that which
arises by testament, when the testator gives his succes-
sion to a particular person; and that which arises by
operation of law, which is called 'succession ab intes-
to.'" Bouvier, Law Dictionary, p. 1037.

Such has been the meaning attached to the word "in-
heritance," when used in our legislation with regard
to succession taxes. In defining the sources from which
public revenues were derived, in Code 1858, section 538
(Shannon's Code, section 685), among them is included

"collateral inheritance taxes." It is inconceivable that the framers of the Code, by this use of the term "inheritance," intended to confine this tax to those taking as heirs the real estate of the ancestor, or to devolutions of property by operation of law, and exclude successions by will to either personal or real estate.

The caption of chapter 174 of the Session Acts of 1893 is as follows: "An act to provide for a collateral inheritance and succession tax, etc." And in the opinion of the court in *Zickler* v. *Union Bank, etc., Co.;* supra, the earlier statute of 1891 and that of 1893 are referred to as imposing a "collateral inheritance tax"—that is, a tax on succession of deceased persons, whether this succession came by operation of law or by will. After this established use of the term "inheritance" by both the legislative and judicial departments of the State, and the broad meaning attached to it, we are satisfied that it would be sticking in the bark, and thus defeating the evident intention of the legislature, to hold now with the contention of the counsel of Mrs. Emerson.

Concluding, as we do, that section 20 of the act of 1909 is but a supplement to the act of 1893, and this proceeding having been instituted in accordance with the requirements of that act, it follows that the attorney of the county court clerk in this suit is entitled to a fee for his services to be paid by the delinquent.

The judgment of the circuit court, to which this case was carried by appeal from the county court, was in accord with the views which we have expressed; and it is in all things affirmed.