UNITED STATES *v.* ALLEN *et al.*

(*Circuit Court, E. D. Missouri, E. D.* September 6, 1888.)

1. INDIANS—INDIAN AGENT—ACCOUNTING—EVIDENCE—TRANSCRIPT OF TREASURY DEPARTMENT.

An Indian agent of the United States, a part of whose duties is to receive and disburse public moneys, is a "person accountable for public money," within the meaning of Rev. St. U S. § 886, providing that when suit is brought in case of delinquency of a revenue officer, or other "person accountable for public money," a transcript from the books and proceedings of the treasury department shall be admitted as evidence, and the court trying the cause shall be authorized to grant judgment accordingly; and under this section the treasury transcript is sufficient to establish an indebtedness of such agent to the government.

2. STATUTES—ENACTMENT—VETO—EVIDENCE OF DATE OF RECEIPT BY HOUSE.

An act of congress discharging certain sureties became a law, unless the president's veto was sent to the house by the 24th of February, 1887. *Held*, that a memorandum in the minute-book of the journal clerk of the house, to the effect that a message in writing was received from the president on the 24th, and laid on the speaker's table, together with testimony by such clerk that such memorandum could refer to no other message than the one in question, and that it undoubtedly did refer to such one, and that, under house rule 24, a message received in the afternoon of the 24th would, according to the usual practice, be laid before the house by the speaker on the succeeding morning, is sufficient proof that the message was received on the 24th, although the journal of the house shows that it was not laid before the house till the following day.

At Law.

*Thomas P. Bashaw*, U. S. Dist. Atty., for plaintiff.

*C. H. Krum*, for defendants.

THAYER, J. The objection noted at the trial to the introduction of the treasury transcript is now overruled. The action is on the official bond of Mr. John How as Indian agent, and charges certain delinquencies. It was a part of his duty as Indian agent to receive and disburse public moneys. He was therefore a "person accountable for public money," within the meaning of section 886, Rev. St. U. S. Such being the case, "a transcript of the books and proceedings of the treasury department," duly certified, is admissible in evidence, and is sufficient, in the absence of countervailing proof, to authorize the court to grant judgment. Section 886, *supra.* I accordingly hold, as in the case of *U. S.* v. *Smith*, 35 Fed. Rep. 490, that the treasury transcript is sufficient to establish an indebtedness on the part of Mr. How to the government for moneys claimed to have been received by him, and not properly disbursed or accounted for. The balance charged against him on the books of the treasury department, as shown by the transcript, is *prima facie* the amount due to the government. In the present case the transcript shows a balance against the agent, on account of money transactions, exceeding the penalty of the bond, omitting any consideration of the alleged indebtedness of Mr. How to the government on account of public property (other than money) said to have been received and not properly accounted for. As no attempt was made at the trial to show that Mr. How was lawfully entitled to other credits than have been allowed by the accounting officers of the treasury, the defense to the action rests wholly upon the plea that the sureties on his bond have been discharged by an act of congress originating in the house of representatives, and passed by that body on December 15, 1886. The act in question in terms released the sureties from all liability It was transmitted to the senate, and passed by that body on February 7, 1887. Subsequently, on February 12, 1887, it was laid before the president of the United States for his approval, and was returned to the house of representatives disapproved, either on February 24 or 25, 1887. If returned on February 24, 1887, the act failed to become a law; but if not returned until February 25, 1887, the executive veto came too late to defeat the legislative will. *Vide* section 7, art. 1, Const. U. S.

The sole question, therefore, is whether the bill was returned to the house of representatives, with the president's objections thereto, on February 24 or February 25, 1887 This is purely a question of fact, and is to be determined by a "resort to any source of information which in its nature is capable of conveying to the judicial mind a clear and satisfactory answer." *Gardner* v. *Collector*, 6 Wall. 499. The journal of the house of representatives, under date of February 25, 1887, contains an entry showing that the president's message containing his objections to the bill in question was on that day "laid before the house by the speaker." There is no other entry, however, in the house journal tending to show the date of

the return of the bill, but from this entry alone it is argued that February 25, 1887, should be accepted as the true date of its return.   On the other hand, a minute-book kept by the journal clerk of the house of representatives, under date of February 24, 1887, contains the following memorandum: "A message in writing was received from the president of the United States, which was laid on the speaker's table."   Concerning this entry, the journal clerk testifies that such memorandums are usually made by him in his minute-book on receipt of messages from the president, for the purpose of identification in case of several messages being received on the same day; and that a careful search of the journal of the house, as well as the clerk's minutes, shows that no message was received from the president on that day to which the memorandum could relate, unless it was the message in relation to the relief of the sureties of Mr. How, which was laid before the house by the speaker on the following morning, February 25, 1887, and is referred to by the journal entry of that day.   The journal clerk further testifies that the message to which the entry in his minute-book under date of February 24, 1887, relates, was undoubtedly the message containing the president's objections to the bill for the relief of the sureties of John How; that it was received during the session of the house, between 4 and 5 P. M., on February 24, 1887, and, according to his recollection, was opened for identification, and laid on the speaker's table; and that, in conformity with the usual practice of the house, under clause 2 of rule 24 of the house of representatives, a message received at the hour named would be laid before the house by the speaker on the following morning, after the reading and approval of the house journal.   As the entry contained in the house journal of February 25, 1887, to the effect that the speaker on that day laid the president's message before the house, does not state when the message was received, and is in no respect inconsistent with the explanation furnished by the journal clerk, the evidence before the court shows almost to the point of demonstration that the bill in question was returned in time to prevent its becoming law; that is, on February 24, 1887.   I so find, and accordingly direct judgment to be entered for the penalty of the bond.