MEMPHIS  v.  BING.

(*Jackson.*　　April  16,  1895.)

1. STATUTES.　*Imposing taxes, how construed.*

It is a general rule that, in the interpretation of all statutes
levying taxes or duties upon subjects or citizens, not to extend
their provisions, by implication, beyond the clear import of the
language used, or to enlarge their operation so as to embrace
matters not specifically pointed out, although standing upon a
close analogy.  In every case, therefore, of doubt, such statutes
are construed most strongly against the government and in
favor of the citizen or subject, because burdens are not to be
imposed beyond what the statutes expressly and clearly im-
port.  (*Post, pp. 648, 649.*)

Cases cited and approved: 2 Story, 369; 5 Blatch., 202; 9 Pick.,
412.

2. SAME.　*Same.　Case in judgment.*

Hence, a statute that imposes specific taxes for municipal pur-
poses upon certain enumerated privileges, and, upon all other
privileges not therein enumerated, a tax equal to that imposed
for State purposes, does not embrace or operate to tax for
municipal purposes a privilege created and taxed for State
purposes subsequently to the passage of such statute.  (*Post,
pp. 645–648, 649.*)

Acts construed: Acts 1893, Ch. 89, § 4; Acts 1879, Ch. 11.

FROM  SHELBY.

Appeal  in  error  from  Circuit  Court  of  Shelby
County.  L.  H.  ESTES,  J.

Memphis *v.* Bing.

METCALF & WALKER for Memphis.

JOHN T. MOSS and J. P. EDMONDSON for Bing.

McALISTER, J.    This is a proceeding by the city of Memphis against the defendant, Bing, and twenty other Chinamen, to enforce against each defendant the payment of a license tax for the privilege of conducting a public laundry in the city.    The Circuit Judge, who heard the case without a jury, was of opinion the defendants were not liable for the tax, and pronounced judgment in their favor.    The city appealed.    It bases its right to collect this tax upon the general revenue Act of 1893, Ch. 89, Sec. 4, p. 115, which declares that public laundries, other than steam, shall pay, each, per annum, $15.

The insistence is, that the Legislature, by this act, declared this business a taxable privilege, not only for the benefit of the State, but likewise for the benefit of the taxing district.    This act was approved April 10, 1893, and, up to that date, the business of hand laundries had never been declared a taxable privilege.    A few days prior to the passage of this act, to wit: on April 5, 1893, the Legislature passed an act restoring to the city of Memphis the power to levy taxes on property and privileges.    Prior to this date, the General Assembly of the State assessed taxes on property and privileges for the city of Memphis, which was then known as the taxing district.    By the Act of 1893, the city was rehabilitated with corporate autonomy,

and authorized to exercise the taxing power, as an arm of the State government. The city was thus clothed with the power to levy a tax for municipal purposes upon all occupations and vocations declared to be privileges by the laws of the State. The Act of April 10, 1893, declared the business of public hand laundries to be a privilege, and levied a tax thereon of $15 for State purposes. The city of Memphis, however, has not, by ordinance or other corporate act, laid any tax upon this occupation for municipal purposes.

An ingenious argument, however, has been submitted by counsel for the city to show that such legislation on the part of the city was unnecessary, for the reason that the Legislature had already laid a tax upon this business for the benefit of the taxing district, and that when the Act of April 5, 1893, was passed restoring the taxing power to the city, it was expressly provided "that all laws imposing privilege taxes for said municipality shall remain in force until changed by the State or by such municipality under the authority here delegated."

It will be remembered that, under the Act of 1879, all taxes on privileges and property were levied for the municipality directly by the State. This statute enumerated a catalogue of privileges, and taxed them all for municipal purposes. This Act further provided "that there is hereby assessed on all privileges not herein specifically enumerated, a tax equal to the tax assessed for State purposes,

the same to be collected as other privileges are collected." This Act was amended by the Act of 1881 fixing the minimum tax on such privileges at ten dollars. When this legislation was enacted, in 1879 and 1881, the State had not declared the business of a public hand laundry to be a taxable privilege, and no such legislation was enacted until April 10, 1893, or more than twelve years thereafter. The determinative question then is, whether the Act of 1879, assessing a tax on all privileges not therein specifically enumerated, fixes a tax upon a privilege not then created, and not brought into existence until more than twelve years thereafter.

It would seem that the mere statement of this proposition would import its own refutation, especially since it appears that, in the meantime, the power of taxation has been restored to the city, and it has not chosen to tax this occupation as a municipal privilege. It is admitted by counsel for the city that, under its rigid literalism, the Act of 1879 only embraced the State privileges then created and taxed. It will be observed that the Act of 1879 provides for a municipal privilege tax equal to the tax assessed for State purposes. The word assessed is in the past tense, and refers to taxes already assessed on privileges, and cannot be held to have a prospective application to privileges thereafter created. The force of this construction is admitted by counsel for the city, but his insistence is "that the spirit and intent of the Act was that

any privilege not specifically enumerated, but which, by subsequent Acts of the Legislature, might be declared and assessed as a privilege for the State, should be likewise assessed in the same amount for the city." We cannot think this tax is within either the letter or the spirit of the law.

It is true, as stated by Mr. Cooley in his work on Taxation, page 198, "that the underlying principle of all construction is that which seeks the intent of the Legislature in the words employed to express it. Beyond the words we are not to look, where the meaning is plain and intelligible." The same author quotes with approval, the following language from Dwarris on Statutes, pp. 742–749, viz.: "It is a well settled rule of law that every charge upon the subject must be imposed by clear and unambiguous language. Acts of Parliament which impose a duty upon the public will be critically construed with reference to the particular language in which they are expressed. When there is any ambiguity found, the construction must be in favor of the public, because it is a general rule that, when the public are to be charged with a burden, the intention of the Legislature to impose the burden must be explicitly and distinctly shown."

Mr. Justice Story, in giving reasons for holding that the revenue act of 1841 did not intend to levy a certain permanent duty on indigo, said: "My reasons for this conclusion are these: In the first place, it is, as I conceive, a general rule that in the in-

terpretation of all statutes levying taxes or duties upon subjects or citizens, not to extend their provisions by implication beyond the clear import of the language used, or to enlarge their operation so as to embrace matters not specifically pointed out, although standing upon a close analogy. In every case, therefore, of doubt, such statutes are construed most strongly against the government and in favor of the citizen or subject, because burdens are not to be imposed beyond what the statutes expressly and clearly import." See *United States* v. *Wigglesworth*, 2 Story, 369.

Said Mr. Justice Nelson: "Duties are never imposed upon the citizen upon vague or doubtful interpretations." *Powers* v. *Barney*, 5 Blatch., 202.

Statutes which impose restrictions upon trade or common occupations, or which levy an excise or tax upon them, must be strictly construed. Parker, Ch. J., in *Sewell* v. *Jones*, 9 Pick., 412.

Parsons in his treatise on Contracts, Vol. III., page 287, states the rule thus: "It is a well-settled principle that every charge upon the subject must be imposed by clear and unambiguous words. *      *      * But it is equally certain that no interpretation will be adopted which must defeat the purpose of the law, provided the language of the statute admit, fairly and rationally, of an interpretation which sustains that purpose."

The plain import of the language employed in the Act of 1879 is, that all privileges not therein

specifically enumerated; but already created and as-sessed for State purposes shall likewise be liable for municipal privilege taxes. The business of hand laundries was not then a taxable privilege, and the Act of 1879 had no such expansive quality as could be made to reach out and bring within its grasp a privilege which was not brought into existence until twelve years afterwards. This would indeed be a farfetched construction, which we hold to be entirely unwarranted by the language of the Act.

Affirmed.