HEISKELL *v.* KNOX COUNTY *et al.**

(*Jackson.*   April Term, 1915.)

1. **EVIDENCE.  Judicial notice.  Legislative journals.**

The court takes judicial notice of the journals of the legislature, showing the steps taken in the enactment of statutes.  (*Post, p.* 183.)

Case cited and distinguished:  State v. Swiggart, 118 Tenn., 556.

Code cited and construed:  Sec. 5584 (S.).

Constitution cited and construed:  Art. 2, secs. 18, 21.

2. **PLEADING.  Demurrer.  Judicial notice.**

Judicial notice of legislative journals, showing the proper enactment of a statute, may be taken on demurrer to a bill, charging that a statute was not regularly enacted; a demurrer not admitting allegations contrary to facts judicially known to the court. (*Post, p.* 185.)

3. **EVIDENCE.  Judicial notice.  Legislative journals.**

Judicial notice will be taken of journals of the legislature before they are published.  (*Post, p.* 186.)

4. **STATUTES.  Legislative journals.  Conclusiveness.**

Journals of the legislature cannot be impeached even for fraud or mistake, but any errors therein can be corrected only by the legislature.  (*Post, p.* 186.)

Cases cited and approved:  Cohn v. Kingsley, 5 Idaho, 416;  White v. Hinton, 3 Wyo., 753.

5. **STATUTES.  Enactment.  Reading.**

Const. art. 2, sec. 18, requiring a bill to be read and passed in each house on three separate days, is satisfied, where it is introduced in duplicate in the two houses, and the Senate bill, after passing its third reading and being enrolled, is on the third reading in the house substituted for the house bill and passed. (*Post, p.* 187.)

---

*For cases passing upon judicial notice of existence and contents of legislative journals, see note in 40 L. R. A. (N. S.), 38.

Heiskell v. Knox County.

Case cited and approved:   Archibald v. Clark, 112 Tenn., 532.
Constitution cited and construed:   Art. 2, sec. 18.

6. **STATES.   Credit.   State university.   County aid.**

Priv. Acts 1915, ch. 1, authorizing Knox county to issue bonds and
therewith buy lands, title to be. conveyed to the State for the
use of the State university, for educational, experimental, and
agricultural purposes, does not contravene Const. art. 2, sec. 29,
prohibiting a county or municipality, unless authorized by its
electors, from giving or loaning its credit to or in aid of any
person, company, association, or corporation, or from becoming
a stockholder with others in any company, association, or cor-
poration; the mischief sought to be prevented being a business
partnership between a municipality or county and individuals or
private corporations or associations.   (*Post*, *p.* 188.)

Cases cited and distinguished:   Ransom v. Rutherford Co., 123
Tenn., 1; East Tennessee University v. Knoxville, 65 Tenn.,176.
Constitution cited and construed:   Art. 2, sec. 29.

7. **COUNTIES.   Purchase by county.   Injunction.   Bill.**

The averment of the unverified bill to enjoin a county from buy-
ing land that too much is being paid for it, and that complain-
ant believes and alleges that the county is being burdened with
$50,000 more than the land is worth, this going as a profit to
promoters, is insufficient as an attack on the purchase, author-
ized by the legislature at the price attacked.   (*Post*, *p.* 191.)

FROM KNOX.

Appeal from the Chancery Court of Knox County.—
R. H. SANSOM, Special Chancellor.

NOBLE SMITHSON, for appellant.

SHIELDS & CATES and JOHNSON & COX, for appellee
Knox County.

MAYNARD & LEE and WEBB & BAKER, for appellee University of Tennessee.

MR. JUSTICE FANCHER delivered the opinion of the Court.

It appearing to the court that the public interest requires it, this case was advanced for hearing and was heard at Jackson on May 31, 1915, as provided by law, upon the transcript of the record from Knox county chancery court, the assignments of error by appellant, reply brief thereto, and the oral argument.

It appears that defendants T. A. Wright and others were the owners of a tract of land near Knoxville, known as the Cherokee tract, and the quarterly court of Knox county, on the first Monday in January, 1915, adopted a resolution upon a proposition made to it by the owners to buy said land, and that the title thereto should be conveyed to the State of Tennessee for the use of the University of Tennessee.

It further appears that the legislature of this State passed an act at its recent session, being chapter 1, authorizing Knox county to purchase said property for agricultural, experimental, and educational purposes, to be held by the State for the use of the University of Tennessee at Knoxville, and to authorize the county court of said county to issue and sell coupon bonds in an amount not to exceed $125,000 to pay for same, and to provide for the redemption of said bonds.

On March 23, 1915, this bill was filed by S. G. Heiskell on behalf of himself and all other taxpayers of

Knox county, praying an injunction against the sale of said bonds, to which bill Knox county, and R. A. Brown, as county judge thereof, together with the owners of said Cherokee tract of land, were made defendants.

The bill of complainant contains a number of allegations, in which the act of the legislature authorizing the sale of this property is attacked on various grounds, and questions are also made as to the right of the county to purchase property of this nature for the purposes proposed, and also averring that the said land is not worth the price proposed to be paid for it; that complainant believes and alleges that the county is being burdened with $50,000 more than the land is really worth, this sum being added to the real value of the land as a bonus or profit to some of the promoters. The questions raised as to the act of the legislature authorizing the sale relate to the constitutionality of the act.

Demurrers were interposed to the bill by the defendants. They also answered the bill on March 29, 1915. On April 7, 1915, the chancellor sustained all the demurrers and dismissed the bill, and complainant, Heiskell, appealed in error to this court. Only three of the questions raised in the original bill are now insisted upon in the assignments of error. We will now take up these three propositions.

The first assignment of error is upon the question raised in the bill in section 5 thereof, and is based on article 2, section 18, of the constitution of Tennessee. This section of the bill alleges that the act authorizing

the purchase of the property and providing for the issuance of bonds for that purpose was not read once on three different days and passed each time in the house, where it originated, before it was transmitted to the other house, and that the bill was never read and passed on three different days in each house of the legislature; that said act did not receive the assent of the majority of all the members to which each house was entitled under the constitution, as required by section 18, article 2.

. This part of the bill was demurred to by Knox county, R. A. Brown, county judge, and Jesse L. Henson, county court clerk, specially on the ground that the journals of the senate and house of representatives (of which the court will take judicial notice) show that said act was duly, legally, and constitutionally passed.

Certified copies of the journals of the senate and house of representatives were exhibited with the demurrer on the trial of the cause, and certified copies are filed with this court as a part of the brief.

It is said by complainant that the demurrer admitted the truth of this allegation, and the position is taken that the averments of the bill cannot be put in question upon the demurrer.

Article 2, section 21, of our constitution provides that each house shall keep a journal of its proceedings; the ayes and noes shall be taken in each house upon the final passage of each bill of a general character and bills making appropriations of public moneys.

It is provided by section 5584, Shannon's Code of Tennessee, that the proceedings of the legislature are proved by the journals.

This court has held in *State* v. *Swiggart,* 118 Tenn., 556, 102 S. W., 75, that the court will take judicial notice of the journals of the general assembly showing the various steps taken in the enactment of statutes, and that these need not be specially pleaded or proved if a statute is attacked for want of formalities in its enactment required by the constitution. It was held that every reasonable presumption will be made in favor of the regularity and validity of the proceedings of the general assembly as a co-ordinate branch of the government.

It was unnecessary to file copies of these entries from the journals of the house and senate except to call the court's attention thereto. Can the court take notice of these proceedings upon a demurrer, in the face of a direct charge in the bill that such proceedings were not regular as required by the constitution? Or is it required that litigants and the courts must wait until an answer is filed and an issue of fact raised upon the question before the court may judicially note these proceedings? We think not. It seems clear that there is no necessity that pleadings make an issue in order for the court to take notice of these journal entries, but the court will take notice of such proceedings, as it always takes notice of any statute of the general assembly.

It is true that the demurrer admits the truth of facts charged in the bill. But this confession for the purpose of hearing the demurrer is strictly confined to the facts. The demurrer does not admit matters of law suggested in the bill or inferred from the facts stated, nor does it admit the arguments, deductions, inferences, or conclusions set forth in the bill. It does not admit allegations contrary to the facts judicially known to the court. Gibson's Suits in Chancery (2 Ed.), section 304; 1 Daniel's Chancery Practice, 545, 546. It is said by Mr. Daniel, on page 546 of said volume:

"When facts are averred in the bill which are contrary to any fact of which the court takes judicial notice, the court will not pay any attention to the averment. Thus where in order to prevent a demurrer it was falsely alleged in the bill that a revolted colony of Spain had been recognized by Great Britain as an independent State, Sir Lancelot Shadwell, V. C., upon the argument of a demurrer to the bill, held that the fact averred was one which the court was bound to take notice of as being false, and that he must therefore take it just as if there had been no such averment in the record."

We hold therefore that the court may take judicial notice of these journal entries for the purpose of determining whether the bill was constitutionally passed.

The journal had not been published when this case was tried before the chancellor, but it had been made out, and it is the journal, and not its publication, of which the court takes notice. If the journal could be

Heiskell v. Knox County.

disputed or contradicted, then an issue might be presented upon this charge in the bill, but it is the concensus of authority that the recitals in the journals of the legislature are conclusive. They are entitled to absolute verity, and cannot be impeached on the ground of mistake or fraud. If there are errors, the house itself is the only tribunal authorized to correct them. 38 Cyc., 958; *Cohn v. Kingsley,* 5 Idaho, 416, 49 Pac., 985, 38 L. R. A., 78; *White v. Hinton,* 3 Wyo., 753, 30 Pac., 953, 17 L. R. A., 66.

The journals of the senate and house show that this bill was constitutionally passed. The bill was introduced concurrently in the house and in the senate. After having been passed by the senate, as required by the constitution, having passed the first and second readings on two separate days, it was passed on its third and final reading on another day by a vote of twenty-six ayes, which was unanimous. It was thereupon enrolled and transmitted to the house. In the meantime the house bill upon the same subject and for the same identical purpose had been likewise passed upon its first and second readings on two separate days, and recommended for passage by the Committee on Agriculture, and on another and later day the senate bill, having been transmitted to the house, was substituted for the house bill, and thereupon passed its third and final reading in the house by a vote of seventy-one ayes, being unanimous. The house bill and senate bill were the same in tenor and substance in their caption and body, and when the senate bill was substituted for

the house bill and read and finally passed in the house as above indicated, the law was constitutionally enacted, and the constitutional requirements of article 2, section 18, that a bill shall be read and passed in each house on three separate days, complied with. *Archibald* v. *Clark,* 112 Tenn., 532, 82 S. W., 310.

The second assignment of error is upon the question raised by section 7 of the bill, based on article 2, section 29, of the constitution, to the effect that the credit of no county, city, or town shall be given or loaned to or in aid of any person, company, association, or corporation except upon an election to be first held by the qualified voters of such county, city, or town and the assent of three-fourths of the votes cast in said election; nor shall any county, city, or town become a stockholder with others in any company, association, or corporation except upon a like election and the assent of a like majority.

The bill charged that the effect of the action of the county court and the act of the legislature was to give or loan the credit of Knox county to the University of Tennessee without such an election, and therefore was in violation of the constitution.

The defendants demurred to this portion of the bill because the State of Tennessee is not a person, company, association, or corporation within the meaning of said constitutional provision, and that the county was not required, under the constitution, to submit the issuance of said bonds to an election of the qualified voters of the county, and that their issuance by the

county court under the provisions of the act in question was not unconstitutional.

The property sought to be acquired, known as the Cherokee tract, is a large body of land composed of 569 acres adjacent to the present experiment station farm of the University of Tennessee at Knoxville, and lying near the city of Knoxville, as recited in the Enabling Act, chapter 1, Private Acts of 1915.

The said act recites that the tract contains a diversity of soil which will enable Knox county to exhibit and advertise to the world the great diversity of crops which can be produced on its varied soils, as well as demonstrating to the citizens the methods by which the productiveness of this soil and farming lands can be increased, thereby developing the agricultural resources of said county.

The act further recites that the enlargement of the agricultural and experimental station by reason of the acquisition of the additional lands will develop the farming, stock raising, dairying, and other resources of said county, and will enable the said university to educate a larger number of its citizens, and will greatly enhance the value of taxable property in said county, and benefit each and every citizen thereof.

But we may assume that the acquisition of this land by the county court is more especially for the benefit of the State, and yet under our authorities this proposed bond issue may be made by the county and the property purchased with the bonds and transferred to the State of Tennessee for the use of the University of

Tennessee for educational, experimental, and agricultural purposes.

This question was before the court in the case of *Ransom* v. *Rutherford County*, 123 Tenn., 1, 130 S. W., 1057, Ann. Cas., 1912B, 1356. That case arose out of a contribution of $100,000 by Rutherford county, Tennessee, $80,000 being also given by the municipality of Murfreesboro, for the purpose of having established in said county by the State of Tennessee one of its three normal schools, located in the State. The said county also donated a site for the location of said school. The bonds were issued by the county court and the municipality without submission of the same to the vote of the people. The bond issue was attacked on the same ground as in this case. It was held that the letter and spirit of this provision in the constitution is that the county shall not be a stockholder or joint owner with any company, association, or corporation in any enterprise or improvement; that the mischief it seeks to prevent is a business partnership between a municipality or subdivisions of the State and individuals or private corporations or associations; that it forbids the union of public and private capital in any enterprise whatever. It was observed in that case that the State is a sovereign, and is in no sense a person, company, association, or corporation in the meaning of this constitutional inhibition.

This question was also decided against the contention of complainant in the case of *East Tennessee University* v. *Knoxville,* 6 Baxt., 176.

The third and last assignment of error is based upon the question raised by section 8 of complainant's bill that the land is not worth the amount paid for it, the allegation being as follows:

"Sec. 8.  Plaintiff avers that the Cherokee land is not worth exceeding $75,000.  He believes and alleges that the county is being burdened with $50,000 more than said land is really worth, this sum being added to the value of the land as a bonus or profit to some of the promoters."

The defendant demurred to this portion of the bill because the bill shows that the county court exercised its legislative powers and discretion in purchasing the property complained of, and that this legislative power and discretion could not be reviewed by the court upon the complaint of a citizen or taxpayer whose judgment might differ, or who might disagree with the members of the county court.

The bill is not sworn to.  It does not charge that the county court has acted in bad faith, or that it has committed, or is about to commit, any unauthorized act. It mildly avers that too much is being paid for the property, and that complainant believes and alleges that the county is being burdened with $50,000 more than the land is worth, this going as a profit to the promoters.

This is not sufficient as an attack upon this purchase, in view of the fact that the legislature grants full authority to purchase the lands at the price and for the purpose as previously agreed upon by the county court.

The act of the legislature is very full, and covers the entire proposition. It recites the contract and grants full authority to carry out the purchase. We are of opinion, and so hold, that the bill is entirely insufficient to enjoin and prevent this enterprise agreed upon by the county court of Knox county and approved by the State through its legislature.

The result is we find no error in the decree of the chancellor in dismissing the bill, and this decree must be affirmed.