STATE *ex rel.* THOMPSON, ATTY. GEN., *et al. v,* DIXIE FI-
NANCE CO.*

*(Nashville.* December· Term, 1925.)

1.  **STATUTES.** Affirmative recitals of Senate Journal held to preclude
    presumption that bill was returned by Governor to clerk of Senate
    or chairman of enrolled bills.

    Where Senate Journal plainly recited that a bill was returned to the
    Senate by the Governor, through his secretary, on a certain day,
    there was no room for presumption that the bill was returned
    earlier to clerk of Senate or the chairman on enrolled bills. (*Post,*
    *pp.* 315, 316.)

    Acts cited and construed: Acts 1925; ch. 134; Pub. Acts 1917, ch. 62;
    Pub. Acts 1925, ch. 76.

    Cases cited and approved: Johnson City v. Eastern Electric Co., 133
    Tenn., 632; Harpending v. Haight, 39 Cal., 189.

    Constitution cited and construed: Sec. 18, art. 3.

2.  **EVIDENCE.** Stipulation of counsel contradicting recitals of Senate
    Journal could not be considered by Supreme Court.

    Stipulation of counsel constituting direct contradiction of recitals of
    Senate Journal as to date of return of bill by Governor could not be
    considered by the Supreme Court.  (*Post, pp.* 316, 317.)

3.  **STATUTES.** Recitals of Senate Journal are entitled to absolute
    verity, and cannot be impeached even for mistake or fraud.

    Recitals of Senate Journal are entitled to absolute verity, and cannot
    be impeached even for mistake or fraud. (*Post, pp.* 316, 317.)

4.  **STATES.** House itself is only tribunal authorized to correct error in
    legislative Journal.

    House itself is only tribunal authorized to correct error in legislative
    Journal. (*Post, pp.* 316, 317.)

State ex rel. v. Dixie Finance Co.

5. **STATUTES.** Legislative bill, which recitals of Senate Journal showed was not returned by Governor within time prescribed, became law.

Senate Bill No. 355 of 1925, regulating small loans which recitals of Senate Journal showed was not returned by Governor with his veto within time prescribed by Constitution, article 3, section 18, became law. (*Post, pp.* 316, 317.)

6. **PAWNBROKERS AND MONEY LENDERS.** Statute repealed by revision.

Senate Bill No. 355, regulating small loans, *held* to repeal Pub. Acts 1917, chapter 62, because there was a complete revision of the subject-matter dealt with by the 1917 act. (*Post, pp.* 316, 317.)

7. **STATUTES.** Act amending repealed act was void.

Since Senate Bill No. 355 repealed Pub. Acts 1917, chapter 62, Pub. Acts 1925, chapter 76, attempting to amend latter act, was void. (*Post, pp.* 316, 317.)

Cases cited and approved: Heiskell v. Knox County, 132 Tenn., 180; United States v. Allen, 36 F., 174.

RESPONSE TO PETITION TO REHEAR.

8. **PAWNBROKERS AND MONEY LENDERS.** Statute, declaring business conducted without "license" nuisance, held inapplicable, "or other authority organized under laws."

Pub. Acts 1919, chapter 158, providing that the practicing of any profession, business, or occupation for which a license issued by some board or other authority organized under laws of State is required, is a nuisance, is not applicable to a loan company required to pay privilege tax or license; the phrase "or other authority organized under laws of State" having reference to organized authority or body vested with power to issue licenses after examination, and in the exercise of discretion, and "license" meaning one issued by a board clothed with discretion. (*Post, pp.* 317-320.)

9. **STATUTES.** Statutes levying taxes or duties on citizens are strictly construed in favor of citizen and against government.

State ex rel. v. Dixie Finance Co.

Statutes levying taxes or duties on citizens are strictly construed in favor of citizen and against government. (*Post, p.* 320.)

Cases cited and approved: Memphis v. Bing, 94 Tenn., 644; Watts v. Hauk, 144 Tenn., 215; McMillan v. City of Knoxville, 139 Tenn., 319; Nashville v. Linck, 80 Tenn., 507; Davis v. Hailey, 143 Tenn., 247.

10. **NUISANCE. When State may abate nuisance in equity stated.**

State may not seek to abate nuisance in equity, unless jurisdiction is clearly given by statute, or purpresture or other such nuisances recognized under common law exist. (*Post, p.* 321.)

11. **LICENSES. Statute as to privilege taxes held impliedly repealed.**

Acts 1867-68, chapter 79, section 16 (Shannon's Code, sections 1004, 1005, 1006), *held* impliedly repealed by subsequent revenue acts covering general subject relating to payment of privilege taxes. (*Post, pp.* 321, 322.)

Acts cited and construed: Acts 1867-68, ch. 79, sec. 16;

Cases cited and approved: State v. Manz, 46 Tenn., 557; Zickler v. Bank, 104 Tenn., 277; Poe v. State, 85 Tenn., 495; Lewis v. Mynatt, 105 Tenn., 511; Malone v. Williams, 118 Tenn., 445; Druggist Cases, 85 Tenn., 450.

Code cited and construed: Secs. 1004, 1005, 1006 (S.).

12. **STATUTES. Statute creating definite punishment repeals former mode.**

Statute creating definite punishment repeals former mode. (*Post, pp.* 322, 323.)

Cases cited and approved: Roberts v. State, 2 Tenn., 423; Wharton v. State, 45 Tenn., 6.

13. **STATUTES. Subsequent act, containing complete scheme of legislation, operates as repeal of prior act on same subject.**

Subsequent act, containing complete scheme of legislation upon subject which it covers, operates as repeal of prior act on same subject. (*Post, p.* 323.)

State ex rel. v. Dixie Finance Co.

14. **CONSTITUTIONAL LAW.** *Loan company entitled to raise validity of statute, and to have subsequent opportunity to comply.*

Since there was a serious question whether Senate Bill No. 355, which required a loan company to have license, became a law, the company was entitled to raise the question whether it ever became law, and to have reasonable opportunity to comply therewith after it was held valid. (*Post, p.* 323.)

Acts cited and construed: Acts 1919, ch. 158.

15. **LICENSES.** State held entitled to recover unpaid privilege taxes and penalties, in suit for injunction.

State *held* entitled to recover unpaid privilege taxes and penalties provided by Acts 1925, chapter 134, in suit to enjoin the carrying on of the business, especially where the bill sought such recovery. (*Post, pp.* 323-326.)

Acts cited and construed: Acts 1925, ch. 134; Acts 1877, ch. 97.

Cases cited and approved: State & Davidson County v. Hirsch Bros., 84 Tenn., 40; State v. Nashville Savings Bank, 84 Tenn., 111; Mc-Creary v. First Nat. Bank, 109 Tenn., 128; State v. Memphis & C. R. Co., 82 Tenn., 62; State v. Duncan, 71 Tenn., 688; Dollar Savings Bank v. United States, 19 Wall., 240; Mayor & Aldermen of Jonesboro v. McKee, 10 Tenn., 170.

16. **STATES.** Governor's message is part of Senate Journal entry.

Governor's message, returning bill is part of Senate Journal entry concerning the return of the bill, in which it is set out. (*Post, pp.* 326-328.)

17. **STATUTES.** Governor's message held to show that he received legislative bill for approved five days before date on message.

Governor's message to Senate, dated April 1st, appearing in Senate Journal, and stating that he held bill therewith returned without approved "until the last moment" showed that the bill was received by him five days previous to such date, or March 26th. (*Post, pp.* 326-328.)

---

*Headnotes 1. Statutes, 36 Cyc., p. 1250 (Anno); 2. Evidence, 22 C. J., Section 1422; 3. States, 36 Cyc., p. 851; Statutes 36 Cyc., p. 1248;

4. States, 36 Cyc., p. 851; 5. Statutes, 36 Cyc., p. 963; 6. Statutes, 36 Cyc., p. 1165; 7. Statutes, 36 Cyc., p. 1055; 8. Statutes, 36 Cyc., p. 1165; 9. Statutes, 36 Cyc., p. 1187; 10. Nuisances, 29 Cyc., p. 1238; 11. Licenses, 37 C. J., Section 67; 12. Statutes, 36 Cyc., p. 1073; 13. Statutes, 36 Cyc., p. 1079; 14. Constitutional Law, 12 C. J., Section 177; 15. Licenses, 37 C. J., Section 123; 16. Statutes, 36 Cyc., p. 851; 17. Statutes, 36 Cyc., p. 1249.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —Hon. James B. Newman, Judge.

Seth M. Walker and Wm. Waller, for appellant.

W. C. Cherry and Thomas A. Shriver, Jr., for appellees.

Mr. Justice Hall delivered the opinion of the Court.

The bill in this cause was filed by the State, on relation of A. S. Caldwell, its commissioner of insurance and banking, J. D. Senter, its commissioner of finance and taxation, and Frank M. Thompson, its Attorney General, on May 13, 1925, against the defendant, Dixie Finance Company, a Delaware corporation, having an office and agent, and doing business in the city of Nashville, Davidson county, Tenn.

The bill was filed for two purposes:

(1) To enjoin the defendant from engaging in the business of lending money on wages and salaries, at interest rates in excess of ten per cent. per annum, unless

and until it should obtain the proper licenses required by law for engaging in said business.

(2) To collect delinquent privilege taxes alleged to be due from the defendant to the state and county.

The Revenue Act of 1925 (Acts 1925, chapter 134), which became effective May 1, 1925, imposed a privilege tax and required a license for lending money on salaries or household furniture, and also imposed a privilege tax and required a license for lending money at rates of interest in excess of ten per cent. per annum. Chapter 62 of the Public Acts of 1917, as amended by chapter 76 of the Public Acts of 1925, required an additional license of persons and corporations like the defendant engaged in the business of lending money on wages or salaries.

The bill alleged that the defendant was doing business without the required licenses, and sought:

(1) A decree against defendant for the amount of privilege taxes, with interest, penalties, and costs.

(2) An injunction restraining the defendant from collecting or attempting to collect any money from any person to whom it had hitherto made illegal loans, or from bringing any suits or procuring any judgments for such loans, and from taking any steps or procuring others to take any steps to collect any judgments already taken.

(3) That an injunction issue restraining the defendant from lending money on wages or salaries, except as authorized by the Public Acts of 1917 and 1925, unless and until the defendant complied with said acts in every particular and has paid privilege taxes and obtained a license as a loan company.

The writ of injunction was granted, as prayed for, in the nature of a stay order, until application for an injunction could be made on May 20, 1925.

On May 20, 1925, defendant filed its demurrer incorporated in an answer to the bill. The demurrer set up numerous defenses, among them, that chapter 76 of the Public Acts of 1925, which attempted to amend chapter 62 of the Public Acts of 1917, was unconstitutional and void, in that:

A bill, being a complete act of legislation upon the entire subject-matter of chapter 62 of the Public Acts of 1917, was regularly passed by the General Assembly of 1925, the same being Senate Bill No. 355, known as the "Small Loan Bill," and the same became a law as shown by the Journal of the Senate; the Governor not having returned the same with his veto within the time prescribed by the Constitution of the State.

The cause was heard by the chancellor May 20, 1925, and, of his own motion, he modified the injunction, so as not to prevent the defendant from collecting the principal sums loaned to its customers; but the court otherwise granted the injunction prayed for in the bill, holding chapter 76, Acts of 1925 which attempted to amend chapter 62, Acts of 1917, valid and in full force and effect; and further holding that Senate Bill No. 355 did not become a law of the land, and declined to further modify the injunction, to which action the defendant excepted.

Then the cause came on to be further heard, upon motion of the defendant to dispose of its demurrer, whereupon the court overruled the demurrer, except to that part of the bill which prayed for a forfeiture of the principal sums loaned by the defendant.

From this decree defendant appealed to this court, and has assigned errors.

It is conceded by counsel for complainants in their brief in the cause of *State of Tennessee ex rel. Frank M. Thompson, Attorney General, et al. v. J. B. Hatley,* a companion cause also appealed from the chancery court of Davidson county, and heard by this court along with the instant cause, that, if Senate Bill No. 355 became a law by reason of the alleged failure of the Governor to return the bill with his veto within five days as required by section 18 of article 3 of our Constitution, then chapter 62 of the Public Acts of 1917 was repealed by implication, and chapter 76 of the Public Acts of 1925, being an amendment of a nonexisting act, is void and of no effect. The question then is, Did Senate Bill No. 355 become a law by reason of the failure of the Governor to return it with his veto within the time required by the constitutional provision above referred to?

Section 18 of article 3 of our Constitution provides, in part, as follows: "If the Governor shall fail to return any bill, with his objections within five days (Sundays excepted) after it shall have been presented to him, the same shall become a law without his signature, unless the General Assembly, by its adjournment, prevents its return, in which case it shall not become a law."

With reference to Senate Bill No. 355, the Senate Journal contains the following recital:

"Thursday, April 2, 1925.
Sixty-Fifth Day.

"The Senate met at 9:30 a. m. and was called to order by Mr. Speaker Hill.

"The proceedings were opened by prayer by Chaplain R. J. Craig.

"On call of the roll thirty-three senators were found to be present.

"On motion the reading of the Journal was dispensed with.

"Message from the Governor.

" 'Mr. Speaker: I am directed by the Governor to return herewith the following Senate Bill without his approval, and the message in writing. Senate Bill No. 355.

" 'J. D. TALLEY, Secretary.'

"On motion the message was received, ordered read by the clerk, and spread upon the Journal, which is as follows: [Then follows the Governor's message]."

In *Johnson City* v. *Eastern Electric Co.*, 133 Tenn., 632, 182 S. W., 587, it appeared that the Governor failed to return the bill there involved with his veto within five days, but that before the expiration of the five days the legislature had taken a recess for thirty days. The bill was returned with the Governor's veto immediately after that body again assembled pursuant to adjournment. This court held that the bill became a law for the reason that it was not contemplated by the constitutional provision above quoted that the return of the bill be to the house in open session. On the contrary, it held that a proper return of a bill can be made to any proper agent of the house in which the bill originated, such as a clerk, or some member of the committee on enrolled bills. The word "adjournment," as used in the Constitution, means a final adjournment of both houses, not a temporary adjournment.

To the same effect is the holding of the court in *Harpending* v. *Haight*, 39 Cal., 189, 2 Am. Rep., 432. In that case the Governor sent a messenger with the bill and his

veto message to the house in which the bill originated, on the afternoon of the fifth day. When the messenger arrived, the house had adjourned. He thereupon carried the bill back to the Governor. The court held that the bill became a law, for the reason that the Governor should have sent the bill finally and definitely to some agent of the house; it not being necessary that it be returned to the house in open session.

The recitations of the Senate Journal hereinbefore quoted are affirmative, clear, and unequivocal. They show when and how Senate Bill No. 355 was returned to the Senate without the Governor's approval. The Journal entry recites that it was presented in person by the secretary of the Governor on the 2d day of April, 1925. The entry then proceeds: "On motion the message was received," etc. Therefore it cannot be presumed that it was returned to either of the other parties authorized to receive it, to-wit, the clerk of the Senate or the chairman on enrolled bills. There is no room for any presumption that such was the case, because, as before stated, the recitals of the Journal entry are affirmative, clear, and plain that it was returned by the Governor, through his secretary, on the 2d day of April, 1925, which date, it is conceded by complainants, was the sixth day after the bill was received by the Governor.

A stipulation of counsel is relied on by complainants to explain the Journal entry hereinbefore set out. This stipulation, it seems, was filed by counsel for the respective parties after the cause had been appealed to this court. It reads as follows:

"In this cause, it is agreed, subject to objections for competency, that the message of the Governor vetoing

Senate Bill 355 at the last session of the legislature, and the bill itself, were delivered in his behalf to the clerk of the Senate a few minutes before midnight on April 1, 1925, and was then receipted by the clerk, Hunt, signing his name thereto.

"Further, that the Supreme Court may, if it will, consider this stipulation as a part of the record, and as though set forth as a part of the original bill.

[Signed]                 WM. WALLER.

                         "SETH WALKER,

                         Counsel for Complainants.

                         "W. C. CHERRY.

                         "THOS. A. SHRIVER, JR."

This stipulation of counsel is a direct contradiction of the recitals of the Senate Journal and cannot be considered by the court. It was held in *Heiskell* v. *Knox County,* 132 Tenn., 180, 177 S. W., 483, Ann. Cas., 1916E, 1281, that the recitals in the Journals of the legislature are conclusive. They are entitled to absolute verity, and cannot even be impeached on the ground of mistake or fraud. If there are errors in them, the House itself is the only tribunal authorized to correct them. Therefore the recitals of the Senate Journal above set out affirmatively showing that the bill was not returned by the Governor with his veto within the time prescribed by the Constitution, it became a law of the land and repealed chapter 62 of the Public Acts of 1917, because it was a complete revision of the subject-matter dealt with by that act. It also follows as a necessary consequence that the amendatory act of 1925 is void and of no effect, because the act which it attempted to amend did not exist,

having been repealed by the passage of Senate Bill No. 355.

The case of *United States* v. *Allen* (C. C.), 36 F., 174, which is relied upon by complainants in support of their contention that extrinsic evidence can be introduced to explain the entry appearing on the Senate Journal and show the true facts, is not in point. In that case the House Journal of February 25, 1887, to the effect that the speaker on that day laid the President's message before the House, did not state when the message was received, and was in no respect inconsisted with the explanation furnished by the Journal clerk, which the court held was competent in such circumstances.

It results that the chancellor's decree will be reversed the injunction dissolved, and complainants' bill dismissed, with costs.

RESPONSE TO PETITION TO REHEAR.

This cause is now before us on the state's petition to rehear. It is insisted by counsel for the state that the court was in error in dismissing complainants' bill, dissolving the injunction, and taxing it with the costs of the cause.

It is contended by the State that, in spite of the fact that Senate Bill 355 became the law of the land, this cause, notwithstanding said fact, should be remanded to the court below that the State may amend its bill so as to allege that defendant is violating said act by operating without the license provided in said act, and also that it may recover, under the allegations of its bill, the delinquent privilege taxes and penalties prescribed by the General Revenue Act of 1925; it being chapter 134 of the Acts of that session of the General Assembly. The

State bases its first contention on the assumption that chapter 158 of the Public Acts of 1919 is applicable to the defendant's business, and hence its business is abatable under that act. The act of 1919 is entitled:

"An act to define and provide for the abatement of certain public nuisances."

Section 1 reads as follows: "Be it enacted by the General Assembly of the State of Tennessee, that the carrying on, conducting or practice of any profession, business or occupation which is prohibited by the law of this State unless the person so engaging in such profession, business or occupation is in the possession of or holds a license issued by some board or other authority organized under the laws of the State, by any person not possessed of or holding the required license, is hereby declared to be a public nuisance, and the same may be abated under any procedure now provided by law for the abatement of any public nuisances, and such abatement may be accomplished by injunction."

Section 2 provides: "Be it further enacted, that it shall be the duty of any board, organized under the laws of this State, to examine applicants and issue licenses for the carrying on, conducting or practice of the business, occupation or profession for the regulation of which such board was created; provided, that such injunction proceedings may be instituted and prosecuted by any other person or persons affected by any of the nuisances defined in section 1 of this act."

Section 3 reads: "Be it further enacted, that this act take effect from and after its passage, the public welfare requiring it."

We are of the opinion that this act has no application to the defendant's business, but applies alone to businesses, occupations, or professions where it is necessary for a license to be issued by some board, or other similar authority organized under the laws of the State, for the purpose of issuing such license after an examination of the applicant, and in the exercise of its discretion. In other words, this act was intended to apply to lawyers, physicians, dentists, pharmacists, plumbers, and other professions or occupations, and not to businesses, occupations, or professions which are subject to a privilege tax, or the taking out of a license to be issued by a ministerial officer of the State.

That such is the true meaning of said act is shown by the language contained in section 2 thereof. That section provides: "That it shall be the duty of any board, organized under the laws of this State, to examine applicants and issue licenses for the carrying on, conducting or practice of the business, occupation or profession for the regulation of which such board was created. . . ."

If it had been intended that the act should apply to businesses, occupations, or professions which are subject to the payment of a privilege tax, or the taking out of a license to be issued by a ministerial officer, why employ the language "unless the person so engaging in such profession, business or occupation is in the possession of or holds a license issued by some board or other authority organized under the laws of the State"? It is more reasonable to assume that, if the legislature had intended that the act should have such application, it would have said in plain and unmistakable language that it should apply to any profession, business, or oc-

cupation prohibited by the law of this State unless the person so engaged in such profession, business, or occupation is in the possession of or holds a license as re quired by law. We think the phrase "or other authority organized under the laws of the State" has reference to other similar authority; that is, any organized authority or body vested with power to issue licenses after examination, and in the exercise of its discretion, and not to licenses required by statute be issued by some ministerial officer, such as a county court clerk.

Statutes levying taxes or duties upon citizens are strictly construed in favor of the citizen and against the government. *Memphis* v. *Bing,* 94 Tenn., 644, 30 S. W., 745; *Watts* v. *Hauk,* 144 Tenn., 215, 231 S. W., 903.

Manifestly the act of 1919 is not applicable to a person who has simply failed to pay a privilege tax required by law. There is a marked distinction between a "license" in its true sense, issued under the police power, and receipt for a privilege or occupation tax. *McMillan* v. *City of Knoxville,* 139 Tenn., 319, 202 S. W., 65; *Nashville* v. *Linck,* 12 Lea, 507; *Davis* v. *Hailey,* 143 Tenn., 247, 227 S. W., 1021.

We think the word "license" appearing in the act of 1919 means one issued by a board clothed with discretion; in other words, a board or body which examines the applicant as to his personal fitness, qualifications, etc., as in the case of a board of medical examiners and other similar boards. The license required by Senate Bill 355 is not issued as a matter of discretion by any board or body, and is issued without reference to the personal fitness, qualifications, or honesty of the applicant, but is to be issued by the county court clerk, an administrative officer.

The State has no right to come into a court of equity and seek to abate a nuisance unless the jurisdiction is clearly given by statute, or there is a purpresture, or other such nuisance recognized under the common law. Here no purpresture is involved. The relief sought is not preventive, but is highly penal.

Nor do we think that section 1005 of Shannon's Annotated Code is applicable in the cause under consideration. Sections 1004, 1005, and 1006 of said Code together constitute section 16 of chapter 79 of the Acts of 1867-68, which was an amendatory revenue act.

Section 1004 reads as follows: "No injunction or petition for mandamus shall be granted by any judge or court in this State, or any bill or petition for mandamus, alleging the illegality or unconstitutionality of any of the revenue laws of this State, restraining any officer or officers charged with the collection of the public taxes of this State, except upon a final hearing of any cause in the court of last resort, if an appeal should be taken to that court."

Section 1005 reads: "Should any person be proceeded against by an officer charged with the collection of the public revenue, for failing to pay the revenue due the State or county, or for any violations of the revenue laws of this State, such person or persons shall immediately suspend business, and shall not, by himself or themselves, or any other person or persons whatever, be permitted to transact or carry on the business or occupation for the violation of the law for which he or they have been proceeded against."

Section 1006 reads: "A violation of this law (sections 1004 and 1005) is a misdemeanor; and, on conviction, the

152 Tenn.—21.

party violating the law shall be subject to a fine of one hundred dollars, and shall be imprisoned in the county jail for a period not exceeding twenty days; and it shall be the duty of all revenue officers to prosecute all viola-tors of this law, and a failure on the part of revenue offi-cers to prosecute all violations hereof shall also be a mis-demeanor, subject to the same penalty as hereinbefore mentioned; and the judges of the circuit and criminal courts shall give this law in charge to the grand jury."

In *State* v. *Manz,* 6 Cold., 557, 562, this court held that the latter portion of section 16 of chapter 79 of the Acts of 1867-68, providing for indictment, etc., for violations of said act applied only to violations of section 16, and therefore the State having set forth a penalty (for the further continuing in business), this penalty is exclu-sive. In other words, under chapter 79 of the Acts of 1867-68, the mere carrying on of any business, for which a privilege tax was required, without paying the tax, was not a misdemeanor at all.

Our revenue acts are now general, and provide both civil and criminal penalties for the mere carrying on of business without paying the privilege tax, and, as these revenue acts cover the general subject relating to the payment of privilege taxes, we are of the opinion that the Acts of 1867-68 has been impliedly repealed. *Zickler* v. *Bank,* 104 Tenn., 277, 57 S. W., 341; *Poe* v. *State,* 85 Tenn., 495, 3 S. W., 658; *Lewis* v. *Mynatt,* 105 Tenn., 511, 58 S. W., 857; *Malone* v. *Williams,* 118 Tenn., 445, 103 S. W., 798, 121 Am. St. Rep., 1002; *Druggist Cases,* 85 Tenn., 450, 3 S. W., 490.

It is well settled that, when a statute creates a definite punishment, the former mode is repealed. *Roberts* v.

*State,* 2 Overton, 423; *Wharton* v. *State,* 5 Cold., 6, 94 Am. Dec., 214.

A subsequent act containing a complete scheme of legislation upon the subject which it covers operates as a repeal of prior acts on the same subject.

Furthermore, if chapter 158 of the Public Acts of 1919 applied to defendant's business, it would be unjust to defendant to apply it in this cause because there was a serious question as to whether Senate Bill 355 became the law of the land, and defendant had the right to make the question that it did not, and it having been held that Senate Bill 355 is a valid statute, and applies to defendant's business, it should have a reasonable opportunity to comply therewith before its business could be abated by injunction.

As to complainants' right to recover the privilege taxes and penalties provided by chapter 134 of the Acts of 1925, for which taxes and penalties complainants' bill expressly seeks a recovery, we are of the opinion that it is entitled to recover such taxes and penalties in this action. *State & Davidson County* v. *Hirsch Bros.,* 16 Lea, 40; *State* v. *Nashville Savings Bank,* 16 Lea, 111; *McCreary* v. *First National Bank,* 109 Tenn., 128, 70 S. W., 821.

In *State* v. *Memphis & C. R. Co.,* 14 Lea, 62, this court held that when the assessment is lawfully made the tax stands as a debt against the owner of the property, to be enforced either in the mode designated by the statute or in any other legal mode, and that an action of debt may now be brought in the chancery court to recover such tax.

In *State* v. *Duncan,* 3 Lea, 688, where a bill was filed to sell real estate for taxes, which the bill conceded had been previously sold upon statutory proceedings prob-

ably irregular and void, it was said that needful remedies, not specifically prohibited, ought not to be denied the government, where, upon similar facts, they would not be denied to individuals.

In *Dollar Savings Bank* v. *United States,* 19 Wall., 240, 22 L. Ed., 80, where a tax of five per cent. on all undistributed earnings was imposed, and no assessment was made, the United States supreme court held that no other assessment than that made by the statute was necessary. And, although the statute prescribed the mode of collection of the tax, an action of debt would lie to recover the same.

In *Mayor & Aldermen of Jonesboro* v. *McKee,* 2 Yerg., 170, it was said that for any tax which the corporation, by its charter, was authorized to impose, it may bring a suit to collect. The power to lay and collect taxes must necessarily include all means to enforce collection, none of which is so effectual as a suit at law.

In *State* v. *Nashville Savings Bank,* supra, it was held by this court that a privilege tax is a debt, and that it has been repeatedly held that the remedy prescribed by statute for its collection is merely cumulative.

In *McCreary* v. *First National Bank,* supra, it was held that an action in the nature of an action for debt against a national bank for taking, receiving or charging usurious interest, as prescribed by the statutes of the United States, although penal in its effect, is a civil cause of action, the jurisdiction of which was, by the Act of 1877, chapter 97, conferred upon the chancery courts of this State concurrently with the circuit courts.

It is true that in the Druggist cases, supra, which was a suit filed by the State and county of Davidson against

certain retail druggists doing business in the city of Nashville, for the purpose of collecting the privilege tax imposed by law upon retail liquor dealers, it was said that the State, having elected to sue for this tax as a debt, and in the chancery court, could not recover the penalties which might have been recovered by pursuing the statutory remedy of distress warrant.

We think, however, this holding is modified by the sub-sequent holding of this court in *McCreary* v. *First National Bank,* supra. The court probably did not have in mind, when it held that the State could not recover the penalties accruing upon the tax sued for in the Druggist cases, chapter 97, Acts of 1877, which provides, viz.:

"It (that is, the chancery court) shall have and exercise concurrent jurisdiction with the circuit court of all civil causes of action triable in the circuit court, except for injuries to persons, property or character involving unliquidated damages; and no demurrer for want of jurisdiction of the cause of action shall be sustained in the chancery court except in cases of unliquidated damages for injuries to persons, property or character."

It was held in *McCreary* v. *First National Bank,* supra, that a suit to enforce a penalty is a civil cause of action in the sense of the above statute.

It is also sought in the State's petition to rehear in this cause, and in the petition of the defendant filed in the cause of *State of Tennessee ex rel., etc.,* v. *J. B. Hatley,* a companion cause, which was heard and determined at the same time with the instant cause, to have the court reverse its holding that Senate Bill 355 became a valid subsisting statute by reason of the failure of the Governor to return the bill with his veto within five days as required by section 18 of article 3 of our Constitution.

It is said by counsel for the defendant Hatley in the second styled cause that the Journal entry does not show that the bill was transmitted to the Governor on March 26th for his approval, or other action. It is insisted that there is nothing in the Journal entry showing when the Governor received the bill, and, therefore, that it does not appear that April 2d, the date upon which the bill was returned by the Governor through his secretary to the Senate, was beyond the five days in which the bill was required to be returned under the constitutional provision above referred to.

In the instant cause it was expressly conceded by counsel for defendant in their brief that the Governor received the bill on March 26th. No such concession, however, was made by the defendant in the Hatley cause; in fact, the question was not raised in that cause.

It is conceded, however, by the defendant Hatley in his petition to rehear, and such is the law, whether it be conceded or not, that the Governor's message is a part of the Journal entry, and the Governor's message, which is dated April 1, 1925, contains the following statement: "I have held Senate Bill No. 355 to the last moment." This is equivalent to an affirmative statement that the fifth day expired on April 1, 1925, and, therefore, that the bill was received on March 26th, 1925.

In addition to this, there appears on page 30 of the transcript in the instant cause the certificate of Cedric Hunt, clerk of the Senate, of date April 25, 1925, which reads as follows:

"I, Cedric Hunt, chief clerk of the Senate of the Sixty-Fourth General Assembly, do hereby certify that, after

an examination of the records of the chief engrossing clerk of the Senate that Senate Bill No. 355, an act to license and regulate the business of making secured or unsecured loans, was transmitted to the Governor's office, March 26, 1925, for his approval or other action.

" [Signed]

"CEDRIC HUNT,
"Chief Clerk of the Senate.

"This 25th day of April 1925."

While we think this certificate was unnecessary, in view of the affirmative showing of the entry contained in the Senate Journal, it in no way contradicts said entry, and, if extrinsic evidence were needed to show when the bill was received by the Governor, this certificate furnishes such evidence. Mr. Hunt, clerk of the Senate, in this certificate, certifies the existence and the transmission to the Governor of said bill on March 26, 1925, under his seal and by virtue of his authority as the custodian of all Journal entries.

We might say that the Governor's message shows that it was prepared on April 1, 1925, but the Senate Journal entry with respect to Senate Bill 355 expressly shows that it was not returned to the Senate until April 2, 1925, which was the sixth day after the bill was transmitted to the Governor for his approval or other action.

The petition of the State is granted to the extent that the cause will be remanded to the chancery court that it may have a recovery for the privilege taxes and penalties fixed and levied on its business by the Revenue Act of 1925. In all other respects the petition to rehear is denied.

State ex rel. v. Dixie Finance Co.

The State and the defendant are each taxed with one-half of the costs of the appeal to this court.

The costs of the court below will be adjudged by the chancellor upon the remand.